**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 23-cv-02257-JLK

KURT DENNIS,

      Plaintiff,

v.

SCHOOL DISTRICT NO. 1 d/b/a DENVER PUBLIC SCHOOLS;
SUPERINTENDENT ALEX MARRERO, in his individual and official capacities;
DENVER PUBLIC SCHOOL BOARD OF EDUCATION PRESIDENT XÓCHITL GAYTÁN,
in her individual and official capacities;
DENVER PUBLIC SCHOOL BOARD OF EDUCATION VICE PRESIDENT AUON'TAI
ANDERSON, in his individual and official capacities;
DENVER PUBLIC SCHOOL BOARD OF EDUCATION TREASURER SCOTT ESSERMAN,
in his individual and official capacities;
DENVER PUBLIC SCHOOL BOARD OF EDUCATION SECRETARY MICHELLE
QUATTLEBAUM, in her individual and official capacities;
DENVER PUBLIC SCHOOL BOARD OF EDUCATION MEMBER CARRIE OLSON, in her
individual and official capacities; and
DENVER PUBLIC SCHOOL BOARD OF EDUCATION MEMBER CHARMAINE LINDSAY,
in her individual and official capacities,

      Defendants.

---

**REPLY IN SUPPORT OF MOTION TO DISMISS**

---

      Defendants School District No. 1 d/b/a Denver Public Schools ("DPS"), Alex Marrero,

Xóchitl Gaytán, Auon'tai Anderson, Scott Esserman, Michelle Quattlebaum, Carrie Olson, and

Charmaine Lindsay, by and through undersigned counsel, submit this reply in support of their

Motion to Dismiss Plaintiff Kurt Dennis' Complaint for failure to state a claim upon which relief

can be granted.

## INTRODUCTION

This is a case where a school principal was terminated for multiple violations of school district policies after being offered ample opportunity to refute the allegations against him. Dennis' First Amendment claims fail because the speech he cites is not protected by the First Amendment: it was illegal and made pursuant to his official duties. His due process liberty interest claim fails because he was offered a name-clearing hearing, while his traditional due process claim is subject to dismissal for lack of a property interest and because the hearings he received and was offered were all he was due. The individual Defendants also are entitled to qualified immunity on all claims due to the lack of clearly established law prohibiting their alleged actions and plausible allegations of causation. Dennis fails to state a claim, and his Complaint should be dismissed.

## ARGUMENT

**A. The Documents Defendants Submitted are Properly Considered with their Motion to Dismiss.**

Dennis initially tries to strike the documents Defendants submitted with their Motion to Dismiss, which is no surprise given that they are fatal to his claims. He should not be able to evade dismissal through selective pleading.

It is well established that "while courts primarily consider the allegations in the complaint in determining whether to grant a Rule 12(b)(6) motion, courts may additionally consider 'matters incorporated by reference or integral to the claim, items subject to judicial notice, matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint whose authenticity is unquestioned[,] . . . without converting the motion into one for summary judgment.'" *Wyo-Ben Inc. v. Haaland*, 63 F.4th 857, 863 (10th Cir. 2023) (quoting 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (3d ed.)); *see also Geras*

2

*v. Int'l Bus. Machines Corp.*, 638 F.3d 1311, 1314 (10th Cir. 2011) (affirming consideration of "evidence that was referenced in and central to the complaint"). "If the rule were otherwise, a plaintiff with a deficient claim could survive a motion to dismiss simply by not attaching a dispositive document upon which the plaintiff relied." *GFF Corp. v. Associated Wholesale Grocers, Inc.*, 130 F.3d 1381, 1385 (10th Cir. 1997).

The five documents submitted here all fall within these categories. Specifically, Defendants submitted:

- Dennis' job description as Executive Principal of McAuliffe International School ("McAuliffe") (Exhibit A, ECF Doc. 11-1, mistakenly cited as Exhibit B on p. 14 of the Motion to Dismiss);

- Transcript of Dennis' Video Interview with 9News (Exhibit B, ECF Doc. 11-2);

- Dennis's Termination Letter dated July 3, 2023 (Exhibit C, ECF Doc. 11-3);

- DPS Superintendent Regulation GDQD-R (Exhibit D, ECF Doc. 11-4); and

- Dennis' Updated Termination Letter dated August 28, 2023 (Exhibit E, ECF Doc. 11-5).

First, Dennis' job description is plainly a public document, and he does not dispute its authenticity. There is no occasion to engage in Dennis' lexical semantics, as there can be no doubt that his job duties are central and integral to his allegations in support of his First Amendment claims. Dennis alleges he was Principal of McAuliffe (ECF Doc. 1, ¶ 6), and he alleges performing various community engagement duties in that role (*id.* at ¶ 31). Dennis additionally alleges the District's stated reasons for termination were pretextual (*e.g. id.* at ¶ 76), and he alleges his "speech was not made pursuant to his official duties" (*id.* at ¶¶ 105, 123). All for good reason: Dennis bears the

3

burden of establishing that his contested speech was not made pursuant to official duties, *Casey v. W. Las Vegas Ind. Sch. Dist.*, 473 F.3d 1323, 1328 (10th Cir. 2007), as the first part of the well-established, five-prong *Garcetti/Pickering* test, *e.g. Rock v. Levinski*, 791 F.3d 1215, 1219 (10th Cir. 2015)).

Second, the 9News video interview is referenced repeatedly in the Complaint (Doc. 1, ¶¶ 65–68) and is both central and integral because it contains the contested speech underlying Dennis' First Amendment claims. That Dennis spoke to a reporter from his school office is not the only problem with his claims. As discussed in the Motion to Dismiss, the content of the interview is critical because the First Amendment does not protect "speech . . . facilitating illegal activity." *Pleasant v. Lovell*, 876 F.2d 787, 790 (10th Cir. 1989). Dennis acknowledges as much by summarily alleging his "actions were entirely lawful . . . ." (Doc. 1, ¶ 69; *see also id.* at ¶¶ 104, 122 (alleging Dennis' "speech . . . did not violate any law")). Dennis also does not dispute the authenticity of the interview recording or transcript; he even cites to it in his Response when reciting his factual background. (ECF Doc. 14, p. 7 n.2).

Third, the July 3, 2023 termination letter is referenced in the Complaint, with specific mention to its contents, and it too is central and integral to Dennis' allegations. (Doc. 1, ¶ 75 ("The termination letter cited the circumstances surrounding the student on the Safety Plan including Mr. Dennis's decision to speak to 9News, as well as various other complaints over the years that had all been proven unfounded or not violative of DPS policy.")). According to Dennis, the reasons for termination stated in the letter were pretextual. (*E.g. id.* at ¶ 76). Dennis clearly was aware of the letter's contents when the Complaint was drafted, and it would be unfair to preclude its consideration with Defendants' Motion to Dismiss. He also does not contest its authenticity.

Fourth, Superintendent Regulation GDQD-R is an undisputed public document that is incorporated by reference in the Complaint, through the July 3, 2023 termination letter. Dennis does not dispute the regulation's authenticity, and regardless, it and all other DPS regulations and policies are posted online at https://go.boarddocs.com/co/dpsk12/Board.nsf/Public# (under the "POLICIES" tab), which is linked from the District's website at https://www.dpsk12.org/page/policies/. *See Gardner v. Maimi-Yoder Sch. Dist. JT-60*, No. 10-CV-00530-ZLW-KLM, 2010 WL 4537951, at *1 (D. Colo. Nov. 3, 2010) ("School board policies are a matter of public record in Colorado."). Nor can there be any reasonable dispute that GDQD-R is central and integral to Dennis' Complaint. In support of one of his due process claims, Dennis alleges a lack of "an opportunity to present evidence in his defense in front of a decisionmaker" at "a public hearing." (Doc. 1, ¶ 162). The notice and opportunity to be heard that DPS offered to Dennis in the July 3, 2023 termination letter, pursuant to the regulation, is determinative of both his due process claims.

Fifth, and finally, the updated August 28, 2023 termination letter is likewise referenced in the Complaint and both central and integral to it. (*Id.* at ¶ 96). Dennis maintains the additional reasons for termination stated in the updated letter were pretextual, (*id.* at ¶ 98), and one of his due process claims is based on allegations regarding his use of McAuliffe's de-escalation room (*id.* at ¶¶ 83–89). Again, Dennis clearly was aware of the letter's contents when the Complaint was drafted, and it would be unfair to preclude its consideration with Defendants' Motion to Dismiss. Dennis also does not contest the authenticity of the updated termination letter.

In sum, the five documents submitted with Defendants' Motion to Dismiss are all properly considered. There is no basis for the Court to either convert the Motion to one for summary judgment or disregard the documents as Dennis requests.

### B. Dennis' First Amendment Claims Must be Dismissed Because his Speech was Illegal.

Dennis does not dispute that his First Amendment claim should be dismissed if he engaged in illegal speech during his 9News interview. Instead, he maintains he did not violate the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g ("FERPA") and § 19-1-303(2)(a), C.R.S. He is wrong.

FERPA's definition of "Personally Identifiable Information" ("PII") does not shield Dennis. His argument seems to be that everyone at McAuliffe fell into one of two categories: those who had "personal knowledge of the relevant circumstances, to identify the student with reasonable certainty" and those who did not. (Doc. 14, p. 11 (quoting 34 C.F.R. § 99.3). As discussed in the Motion to Dismiss, however, Dennis alleges in the Complaint that almost everyone at McAuliffe fell in the first category (Doc. 1, ¶¶ 48, 59), and he revealed much more about Student A than was alleged to have been widely known, communicating the student's juvenile criminal record in the form of pending charges, police report excerpts and disciplinary information about recommendations for his placement (*id.* at ¶ 66 & URL printed in Complaint; Doc. 11-2, Ex. B, p. 4:4–7, 4:9–10, 4:13–14, 4:19–22). It is absurd to read the definition of PII to allow disclosure of confidential information about a student to individuals who may have some other knowledge about the student. Dennis' speech was unlawful because he revealed information about Student A that is not alleged to have been widely known, under circumstances which no reasonable person would conclude the student's identity would remain anonymous. *See* 34 C.F.R. § 99.31(b)(1).

6

Dennis' reliance on FERPA's emergency exception similarly fails. Even taking his self-serving allegations about his intentions as true, Dennis' legal contention simply makes no sense. What was the "articulable and significant threat to the health or safety of a student or other individuals" facing McAuliffe, per 34 C.F.R. § 99.36(c), and how did an interview with 9News do anything to alleviate such a risk? He does not say. The fact that a student at East High School attacked administrators who attempted a pat-down says nothing about Student A. The FERPA regulation requires "a rational basis for the determination," *id.*, and Dennis' disclosure was not necessary under any reasonable, objective standard. It is also argued that Dennis himself is not subject to FERPA enforcement. This is a distinction without a difference. While Dennis may not have committed a crime or civil offense, his actions as a DPS employee exposed the District to real consequences in the form of lost federal funding. 20 U.S.C. § 1234c.

As for § 19-1-303(2)(a), C.R.S., Dennis omits critical language. While the next section allows public "access to information reporting the arrest or other formal filing of charges against a juvenile" under certain circumstances, the information must be "in the custody of the investigating law enforcement agency, the agency responsible for filing a petition against the juvenile, and the court." § 19-1-304(1)(b.5)(I), C.R.S. Dennis was a school district employee—not the custodian of Student A's criminal records with any authority to release them, and his disclosure during the 9News interview violated state law. There can be no argument about enforcement, as unlike with FERPA, a violation of § 19-1-303 is a civil offense with an individual penalty of up to $1,000. *Id.*, -303(4.7).

7

Accordingly, Dennis violated federal and state law when he spoke to 9News, and his speech, therefore, was not protected. His First Amendment claims should be dismissed on that ground alone.

### C. Dennis' First Amendment Claims Also Must be Dismissed Because His Speech was Made Pursuant to His Official Duties.

Dennis does not dispute that his right to free speech was limited while employed by DPS. Instead, he argues about the references to "external stakeholders" and "public relations" in his formal job description. It requires no inferential leap to conclude that press statements are encompassed by the job description. Of course they are. Speaking with the media about events and procedures at McAuliffe was entirely consistent with Dennis' responsibility to "communicate the [school's] vision, mission, and culture strategy" and "develop[ing]" and "manag[ing]" the school's "public relations program." Doc. 11-1, pp. 1–3. This is a legal question for the Court, *Trant v. Oklahoma*, 426 F. App'x. 653, 659 (10th Cir. 2010) (citing *Chavez–Rodriguez v. City of Santa Fe*, 596 F.3d 708, 713 (10th Cir. 2010)), and there are ample facts in the Complaint, as well as the referenced and public documents, upon which to decide it.

As much as Dennis may have wanted to take off his Principal "hat" when he spoke to 9News, that was completely impractical. While any citizen could have shared how they felt about the shooting at East and student pat downs, Dennis was not an ordinary citizen. He was the chief administrator and public face of McAuliffe, who, by virtue of his position, had access to confidential records regarding Student A. This analysis does not intrude on the *Garcetti*/*Pickering* public concern prong; it states the obvious regarding Dennis' responsibilities as McAuliffe's Principal. When speaking about a school matter from his school office, he inherently and necessarily did so in furtherance of his job duties. Why else did 9News interview him and give

8

him prime time? It is inconceivable that Dennis could have been speaking as John Q. Public about Student A in this context. Dennis' reliance on *Pryor v. School District No. 1*, No. 1:22-CV-02886-JLK, 2022 WL 18145414 (D. Colo. Dec. 23, 2022), is misplaced. The plaintiff there was a volunteer football coach, and there was "[n]othing in the record" to support the conclusion that he spoke "pursuant to any official duties." *Id.* at *12.

In an attempt to shift the Court's gaze from his formal job description, Dennis submits a single page from DPS' Employment Practice Manual. Setting aside that Dennis would prefer exclusion of documents he expressly references in his Complaint, the District has no objection to consideration of the Manual because it is a public document, posted online at https://go.boarddocs.com/co/dpsk12/Board.nsf/goto?open&id=9UVPSL65C509. Even more importantly, the Manual does not say what Dennis says it says. It does not, as Dennis claims, "specifically instruct[] all DPS staff not to speak to the media in an official capacity." (Doc. 14, p. 16). At most, the selected page of the Manual draws a distinction between "personal opinions on District actions and policies" and "official comment on all matters regarding the District." (Doc. 14-1, p. 2). Employees are given no explicit directives. Compare other pages that Dennis omits, where the Manual does delineate staff expectations with use of the mandatory words "shall not". The different approach regarding "Media Relations" makes sense, as the Manual applies to all employees, and this is one topic for which a school principal has broader authority than other staff.

At any rate, Dennis' insinuation that the Interview Speech was not made pursuant to his official duties because DPS did not permit him to give "official comment" without DPS coordination is wrong. "The court has not foreclosed unauthorized speech . . . from being within the scope of [an] employee's official duties under *Garcetti/Pickering*." *Rohrbough v. Univ. of Colo.*

9

*Hosp. Auth.*, 596 F.3d 741, 747 (10th Cir. 2010)*; see also Ellison v. Roosevelt Cnty. Bd. of Cnty. Com'rs.*, 700 F. App'x 823, 830 (10th Cir. 2017) (unpublished) ("That Mr. Ellison violated the policy of silence by reporting the misconduct … does not automatically mean his speech was outside the scope of his official duties."). Speech by Dennis—a prominent school leader who inarguably had a public relations component of his job—concerning matters at McAuliffe of which he had knowledge strictly based on job duties DPS paid him to complete, and given from his McAuliffe office, was decidedly pursuant to his official duties as McAuliffe's Principal. That Dennis alleges he veered from DPS guidance in giving such speech is inconsequential. As Dennis' speech was not protected, his First Amendment claims should be dismissed.

**D. The Individual Defendants are Entitled to Qualified Immunity from Dennis' First Amendment Claims.**

Contrary to Dennis' characterization, this case is not just a new fact pattern for the purpose of assessing qualified immunity. "[T]he contours of the right must be sufficiently clear so that a reasonable official would understand that what he is doing violates that right." *Truman v. Orem City*, 1 F.4th 1227, 1235 (10th Cir. 2021). There is no Supreme Court or Tenth Circuit decision that would have informed the individual Defendants in this case that the First Amendment protects speech by a senior government administrator (let alone a school principal) serving as the public face of that administrator's department (or an entire public school), concerning events taking place in the department, and grounded solely in knowledge gained as a result of the administrator's job duties. Nor is there authority suggesting that speech could still be protected notwithstanding that it violated federal and state law. As already discussed above and in the Motion to Dismiss, authority suggests the opposite is true on both counts.

As a result, Defendant DPS Board members Gaytán, Anderson, Esserman, Quattlebaum, Olson, and Lindsay and Superintendent Marrero are entitled to qualified immunity on Dennis' First Amendment claims.

### E. Dennis' Due Process Claims Fail Because He Had an Opportunity to be Heard, and He Had no Property Interest in Continued Employment.

There is no dispute that if Dennis can prove all elements of his liberty interest claim, he was entitled to a name-clearing hearing. *See McDonald v. Wise*, 769 F.3d 1202, 1213 (10th Cir. 2014). Similarly, "the Due Process Clause requires some kind of a hearing prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Montgomery v. City of Ardmore*, 365 F.3d 926, 935 (10th Cir. 2004) (internal quotation omitted). Such process was afforded and offered here.

Dennis' April 24, 2023 meeting with Human Resources to respond to alleged policy violations met due process requirements for a pre-termination hearing. *See Riggins v. Goodman*, 572 F.3d 1101, 1108 (10th Cir. 2009). In addition, Dennis was offered another hearing to refute all the reasons for his termination, including those he deems injurious to his name and reputation. Dennis' termination letters explained the reasons for his termination, and he was notified of his hearing rights under Superintendent Regulation GDQD-R. (Docs. 11-3–11-5). Dennis does not allege he participated in the GDQD-R hearing process, in which he would have been able to present evidence and witnesses at an internal hearing, as well as at a hearing before a neutral hearing officer with representation by counsel. That process would have afforded Dennis sufficient opportunity to clear his name of any stigmatizing statements, and there is no reason he could not have used the resulting decision to cure his alleged injury.

Dennis argues a name-clearing hearing itself must be held in public and before the final decision-makers. The Tenth Circuit has not required such strictures. Indeed, in *McDonald*, which Dennis cites, the Tenth Circuit found a due process violation because the employer never provided any hearing. 769 F.3d at 1213. The employer contended a separate state employment compensation hearing was sufficient. *Id.* at 1213–14. While the Tenth Circuit disagreed, it did not hold a hearing must be open to the public or conducted by an employer, and it certainly did not hold, as Dennis suggests, that a hearing must be conducted by the employer's decision-maker. *Id.* at 1214. Dennis relies on citations and selective quotations to sister-Circuits, but the Tenth Circuit simply indicated that a name-clearing hearing should be "provided by the entity responsible for the stigmatization." *Id.* As already addressed, that was the case here.

While DPS does not contest the elements of Dennis' liberty-interest claim, it does challenge his entitlement to any pre- or post-termination hearing based on a purported property interest. That is because Dennis had no property interest in continuing employment. As anticipated in the Motion to Dismiss, Dennis stands on the contract between DPS and the Northeast Denver Innovation Zone ("NDIZ"). DPS does not agree that Dennis was a third-party beneficiary of that contract under Colorado law. *See, e.g.*, *E.B. Roberts Const. Co. v. Concrete Contractors, Inc.*, 704 P.2d 859, 865 (Colo. 1985). Even assuming he was, the contract does not make any promise of continued employment. As alleged in the Complaint, DPS was only required to consult with NDIZ before removing Dennis from McAuliffe; the authority to terminate Dennis rested with the DPS Board of Education (Doc. 1, ¶ 79).

Dennis warns against rigid construction with citation to a general pronouncement from the United States Supreme Court, but "[s]tate law determines whether a [particular] claim of

entitlement to employment is sufficient." *McDonald*, 769 F.3d at 1210 (citing *Driggins v. City Okla. City*, 954 F.2d 1511, 1513 (10th Cir. 1992)). And, citing another United States Supreme Court decision, Colorado's Supreme Court has made clear that it looks for "entitlement and durational language"—not a 'mere unilateral expectation.'" *Johnson v. Sch. Dist. No. 1 in the Cnty. of Denver*, 413 P.3d 711, 718 (Colo. 2018) (quoting *Webb's Fabulous Pharmacies, Inc. v. Beckwith*, 449 U.S. 155, 161 (1980)). According to Dennis' own allegations, the NDIZ contract has no entitlement and durational language. This is not a case where some standard of reasonable cause limited employer discretion. Even to the extent NDIZ could, as Dennis puts it, "protect[] his continued employment" (Doc. 14, p. 29), that could only go so far. DPS' Board was empowered to make a final employment decision, "without cause," and "in the absence of restrictions or limitations provided by law." *McDonald*, 769 F.3d at 1210 (quoting *Fremont RE–1 Sch. Dist. v. Jacobs*, 737 P.2d 816, 820 (Colo. 1987)). An analogous argument based solely on statutory provisions affording pre-termination process to licensed teachers was rejected in *Johnson*, and Dennis' similar attempt to bootstrap a property interest must fail here.

 For all these reasons, Dennis was afforded ample opportunity to be heard, and he does not state a due process claim based on an assumed liberty interest or a nonexistent property interest.

## F.  The Individual Defendants are Entitled to Qualified Immunity from Dennis' Due Process Claims.

Defendant DPS Board members Gaytán, Anderson, Esserman, Quattlebaum, Olson, and Lindsay and Superintendent Marrero should be granted qualified immunity from Dennis' due process claims based on the above arguments. Dennis also cannot rely on the votes to terminate him to impose individual liability. As outlined in the Motion to Dismiss, Dennis makes no plausible

allegations that any named individual Board member could grant him process associated with either his liberty or property interest claims. *See McDonald*, 769 F.3d at 1214–15 (holding employee who "was in no position to provide [plaintiff] the process he was due" was entitled to qualified immunity). Nor are there allegations that Board members Lindsay or Olson or Superintendent Marrero made any stigmatizing public statements about Dennis that could support personal liability, and Dennis has not plausibly alleged that Board member Gaytán publicly made any false statement about him. DPS agrees that personal participation requires causation, and Dennis has failed to allege "specific actions taken by particular defendants, or specific policies over which particular defendants possessed supervisory responsibility, that violated [his] clearly established constitutional rights." *Pahls v. Thomas*, 718 F.3d 1210, 1228 (10th Cir. 2013).

**CONCLUSION**

As detailed above and in Defendants' Motion to Dismiss, Dennis' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

RESPECTFULLY SUBMITTED this 26th day of December, 2023.

SEMPLE, FARRINGTON, EVERALL & CASE, P.C.

By: *s/ Jonathan P. Fero*
    Michael Brent Case
    Jonathan P. Fero
    1120 Lincoln Street, Suite 1308
    Denver, CO  80203
    (303) 595-0941
    bcase@semplelaw.com
    jfero@semplelaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on the 26th day of December, 2023, a correct copy of the foregoing was filed and served via CM/ECF to the following:

David A. Lane
Madison Lips
KILLMER LANE, LLP
1543 Champa Street, Suite 400
Denver, CO 80202
(303) 571-1000
dlane@kln-law.com
mlips@kln-law.com
*Attorneys for Plaintiff*

By: *s/ Kathleen Schmidt*