# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-02257-JLK

KURT DENNIS,

  Plaintiff,

v.

SCHOOL DISTRICT NO. 1 d/b/a DENVER PUBLIC SCHOOLS;
SUPERINTENDENT ALEX MARRERO, in his individual and official capacities;
DENVER PUBLIC SCHOOL BOARD OF EDUCATION PRESIDENT XÓCHITL GAYTÁN,
in her individual and official capacities;
DENVER PUBLIC SCHOOL BOARD OF EDUCATION VICE PRESIDENT AUON'TAI
ANDERSON, in his individual and official capacities;
DENVER PUBLIC SCHOOL BOARD OF EDUCATION TREASURER SCOTT ESSERMAN,
in his individual and official capacities;
DENVER PUBLIC SCHOOL BOARD OF EDUCATION SECRETARY MICHELLE
QUATTLEBAUM, in her individual and official capacities;
DENVER PUBLIC SCHOOL BOARD OF EDUCATION MEMBER CARRIE OLSON, in her
individual and official capacities; and
DENVER PUBLIC SCHOOL BOARD OF EDUCATION MEMBER CHARMAINE
LINDSAY, in her individual and official capacities,

  Defendants.

---

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS (ECF NO. 11)

---

Kane, J.

  This matter is before me on the Motion to Dismiss Plaintiff Kurt Dennis's Complaint

(ECF No. 1) filed by Defendants, School District No. 1 d/b/a Denver Public Schools ("DPS"),

DPS's Superintendent—Alex Marrero, and members of the DPS Board of Education—Xóchitl

Gaytán, Auon'tai Anderson, Scott Esserman, Michelle Quattlebaum, Carrie Olson, and

Charmaine Lindsay.[1] While he was employed as a DPS principal, Plaintiff Dennis spoke

---

[1] Throughout my Order, I will refer to DPS, Superintendent Marrero, and the Board of Education Members collectively as "Defendants." When I am only discussing Superintendent Marrero and

critically of certain DPS policies during an interview with KUSA TV ("9News") in Denver. After this interview, DPS terminated Mr. Dennis from his position as principal. In response, Mr. Dennis brought this suit, asserting that Defendants had violated his First and Fourteenth Amendment rights. Specifically, Mr. Dennis alleges Defendants retaliated against him for his exercise of free speech by terminating his employment and making defamatory statements that damaged his reputation and subsequent job search.

Defendants move to dismiss Mr. Dennis's claims in their entirety under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. The Individual Defendants also seek qualified immunity from Mr. Dennis's First and Fourteenth Amendment claims.

## I.    Facts[2]

Mr. Dennis began serving as principal of McAuliffe International School, a DPS middle school, in 2012. As McAuliffe's principal, Mr. Dennis was rated at 90% or higher on DPS staff surveys and "received exemplary reviews from parents, staff, faculty and DPS." Compl. ¶¶ 43-44. During Mr. Dennis's tenure, in 2016, DPS and the Northeast District Innovation Zone ("NDIZ") entered into a contract for McAuliffe to join NDIZ. *Id.* ¶ 35. NDIZ is a nonprofit organization, which aims to promote more autonomous education management. Under its contact with DPS, NDIZ collaborated with DPS to run McAuliffe, and Ms. Colleen O'Brien was Mr. Dennis's supervisor in the NDIZ. *Id.* ¶¶ 35-36. DPS's contract with NDIZ included a provision that DPS "will not take action regarding the . . . removal of school leaders without seeking the

---

the Board of Education Members, I will refer to these individuals collectively as "Individual Defendants."

[2] Through my Order, I have cited only those allegations I deem materially relevant to my ruling.

approval of NDIZ. If the parties fail to agree, either party may bring the dispute to the DPS Board of Education." *Id.* ¶ 79.

In early 2023, the Denver District Attorney's office informed Mr. Dennis that a McAuliffe student was charged with possession of an illegal firearm and, later, eight additional charges, including attempted murder. Mr. Dennis and his staff performed a Threat Assessment for this student, which found the threat from the student was a high level of concern. The Denver Police Department also stated it felt the student posed a danger to the school community and should not be on campus.

In February 2023, Mr. Dennis requested to transfer the student to an online educational program while the charges were pending. DPS denied the request. Mr. Dennis then attempted to expel the student. DPS denied the request. DPS explained that because the violent act allegedly perpetrated by the student took place off school grounds, the student should be permitted to remain physically at school. During the month of March 2023, DPS developed a "Safety Plan" for the student—this required, among other tasks, McAuliffe staff to search and pat-down the student every day upon the student's arrival on campus. *Id.* ¶ 58. The staff was given no training or guidance on how to perform the search and pat-down. *Id.* School administrators were given no training on what to do if the student was carrying a dangerous weapon. *Id.* ¶ 47.

After a student at DPS's East High School injured two school administrators with a firearm found during a pat-down, DPS families raised concerns about DPS's safety policies. *Id.* ¶ 63. Two days after the East High School shooting, Mr. Dennis spoke with 9News about DPS's pat-down policy and refusal to remove the McAuliffe student from campus. *Id.* ¶¶ 65-66. The interview occurred outside of school hours, but Mr. Dennis spoke from his school office. *Id.* ¶ 66 (link to video in Complaint). During the interview, Mr. Dennis spoke about the McAuliffe

student, but did "not mention the student's name, age, gender, or any other personally identifying information." *Id.* ¶¶ 66-67. He also provided 9News with redacted documents related to the student and the relevant charges. *Id.* ¶ 68.

After Mr. Dennis's 9News interview, without directly informing Mr. Dennis or Ms. O'Brien, Mr. Dennis's supervisor, the DPS Board of Education posted to its public agenda that its next meeting included a private "conference with an attorney for the purposes of receiving legal advice concerning 'personnel matters.'" *Id.* ¶ 72. A few days later, Mr. Dennis received a phone call from DPS Director of Human Resources, Ms. Debra Watson, requesting an interview as part of a fact investigation to determine if Mr. Dennis violated any DPS Board of Education policies. *Id.* ¶ 74. Mr. Dennis participated in the twenty-minute interview. *Id.* Nearly two weeks after Mr. Dennis's interview with 9News, DPS sent Ms. O'Brien a letter of concern related to her oversight of Mr. Dennis. *Id.* ¶ 70. This is the only time DPS contacted Ms. O'Brien. *Id.*

On July 3, 2023, Mr. Dennis received two letters from DPS, which terminated his employment. One from Ms. Watson outlining claimed violations of DPS policies and law. *Id.* ¶ 75. The other from Mr. Grant Guyer, Associate Chief of Strategic Operations, informing Mr. Dennis that he was terminated as McAuliffe's principal. *Id.* DPS did not obtain the consent of Ms. O'Brien or anyone affiliated with NDIZ before terminating Mr. Dennis. *Id.* ¶ 70. Mr. Guyer's letter cited circumstances surrounding the McAuliffe student's Safety Plan, Mr. Dennis's decision to speak to 9News, and other complaints that had previously been proven unfounded or not violative of DPS policies. *Id.* ¶ 75. Superintendent Marrero publicly announced Mr. Dennis's termination as McAuliffe's principal on July 3, 2023. *Id.* ¶ 80. Mr. Dennis was not offered an opportunity to present evidence and confront his accusers before a decisionmaker to clear his name. *Id.* ¶ 92.

In August 2023, three of the Individual Defendants, who are DPS Board of Education Members, Mr. Anderson, Mr. Esserman, and Ms. Quattlebaum held a public town hall meeting to discuss Mr. Dennis's termination. *Id.* ¶ 82. During this meeting, these three Individual Defendants publicly distributed Mr. Dennis's termination letter. *Id.* Separately, Mr. Anderson reported Mr. Dennis to the Denver Police Department for his alleged use of the de-escalation room, which is a DPS-policy-created room at McAuliffe used to "de-escalate" "escalated" students. *Id.* ¶¶ 82-85. No related charges have been filed against Mr. Dennis. *Id.* Mr. Anderson also publicly stated that he had received "whistleblower reports that Mr. Dennis had improperly used a de-escalation room at McAuliffe International during the 2022-2023 school year," including that he violated DPS policies by monitoring students from outside the de-escalation room and latching the door from the outside. *Id.* ¶ 83. Mr. Anderson, Mr. Esserman, and Ms. Gaytán publicly referred to the de-escalation room as an "incarceration room." *Id.* ¶ 88.

Later in August, the DPS Board of Education, which included Ms. Gaytán, Mr. Anderson, Mr. Esserman, Ms. Quattlebaum, Ms. Olson, and Ms. Lindsay, voted 6-1 to terminate Mr. Dennis. *Id.* ¶¶ 93-95. After this vote, Mr. Dennis received an updated termination letter, which added DPS policy violations related to McAuliffe's de-escalation room as a reason for his termination. *Id.* ¶ 96. After Mr. Dennis received the updated termination letter, Mr. Anderson held a "solo press conference" during which he "stated that Mr. Dennis only used the alleged 'seclusion room' for students of color." *Id.* ¶ 97.

Since his termination in July 2023, Mr. Dennis has sought employment opportunities in other school districts. *Id.* ¶ 90. He has failed to secure a new position. *Id.*

## II.    Legal Standard

A Rule 12(b)(6) motion does not aim to resolve the merits of the case. It tests only the sufficiency of the complaint. *See, e.g.*, *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994) ("The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."). In ruling on a Rule 12(b)(6) motion, I must accept as true all "well-pleaded" facts in the complaint and view them in the light most favorable to the non-moving party. *See Moore v. Guthrie*, 438 F.3d 1036, 1039 (10th Cir. 2006). These factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

To overcome a motion to dismiss under Rule 12(b)(6), "a complaint must contain enough allegations of fact, taken as true, 'to state a claim to relief that is plausible on its face.'" *Khalik v. United Air Lines*, 671 F.3d 1188, 1190 (10th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). A claim is plausible on its face when the complaint contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," the plaintiff has failed to show entitlement to relief. *Id.* at 679.

## III.    Analysis

### A.  Documents Outside the Complaint

As an initial matter, both Mr. Dennis and Defendants ask me to consider documents outside the Complaint while ruling on the motion to dismiss. Generally, a court should not consider any evidence beyond the pleadings when ruling on a 12(b)(6) motion. *See Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019). The Tenth Circuit has recognized

a "limited exception to this rule," allowing courts the discretion to "consider documents referred to in the complaint if the documents are central to the plaintiff's claim and the parties do not dispute the documents' authenticity." *Id.* (quoting *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002)); *see also Lowe v. Town of Fairland*, 143 F.3d 1378, 1381 (10th Cir. 1998) (explaining that district courts have "broad discretion in determining whether or not to accept materials beyond the pleadings"). I address each document submitted by the Parties in turn and conclude that it is not appropriate to consider any at this stage. In addition to the reasons provided below, I note, given the lack of authentication of these materials, it would be improper to take them into consideration in deciding the Motion to Dismiss.

First, Defendants ask me to consider DPS's job description for "Executive Principal." *See* Mot. to Dismiss, Ex. A, ECF No. 11. Defendants imply that this is the job description for Mr. Dennis's former position and argue I may consider it because it is a public document. Mr. Dennis generally responds that the job description is inappropriate to consider because it is not incorporated by reference in the complaint, is inappropriate for judicial notice, and is not central to the complaint. As I discuss further below, Mr. Dennis's job duties are significant for reviewing his First Amendment claims. A job description, however, "often bear[s] little resemblance to the duties an employee actually is expected to perform . . . [and] is neither necessary nor sufficient to demonstrate that conducting the task is within the scope of the employee's professional duties for First Amendment purposes." *Garcetti v. Ceballos*, 547 U.S. 410, 424-25 (2006). Moreover, it is unclear whether this specific job description applied to Mr. Dennis while he was employed as McAuliffe's principal. Among other discrepancies, Mr. Dennis does not refer to himself as an "Executive Principal," and Defendants fail to note whether

this is Mr. Dennis's specific job title—they only refer to him as "principal." Therefore, I do not consider the job description when ruling on the Motion to Dismiss.

Second, Defendants ask me to consider a transcript of the 9News segment during which Mr. Dennis was interviewed. *See* Mot. to Dismiss, Ex. B, ECF No. 11. Defendants argue it is appropriate to consider this transcript because it "is referenced in and central to" the Complaint. Mot. to Dismiss 6 n.4, ECF No. 11. Mr. Dennis again generally responds that the transcript is inappropriate to consider because it is not incorporated by reference in the complaint, is inappropriate for judicial notice, and is not central to the complaint. Although Mr. Dennis includes a link to the interview in his Complaint, I am unconvinced at this juncture that the transcript is a wholly authentic and accurate transcript. *See* Fed. R. Evid. 901. Additionally, a link to Mr. Dennis's 9News interview is included in the Complaint, negating the need for this transcript. While I do consider the video interview at the link provided in the Complaint, I do not rely on the interview transcript in deciding the Motion to Dismiss.

Third, Defendants ask me to consider two termination letters purportedly sent to Mr. Dennis. *See* Mot. to Dismiss, Exs. C and E, ECF No. 11. Defendants argue I may consider the two termination letters because they are both "referenced in and central to" the Complaint. Mot. to Dismiss 7 n.5, 9 n.7. Once more, Mr. Dennis generally responds that these letters should not be considered because they are not incorporated by reference in the complaint, are inappropriate for judicial notice, and are not central to the complaint. Because Defendants only reference these letters in the fact section of their Motion to Dismiss, and the same facts are contained in the Complaint, I do not take into consideration either termination letter as attached to Defendants' Motion to Dismiss here. I only consider the facts related to the termination letters as pleaded in the Complaint.

8

Fourth, Defendants ask me to consider a DPS Superintendent Regulation. *See* Mot. to Dismiss, Ex. D, ECF No. 11. Defendants argue it is appropriate to consider this regulation because it "is referenced in and central to" the Complaint and "is a matter of public record." Mot. to Dismiss 8 n.6. Mr. Dennis does not cite to this regulation in his Complaint. Defendants appear to include this regulation as an exhibit to their Motion because it is cited in one of the termination letters they have asked me to consider. Further, the document attached to the Motion to Dismiss notes it was last revised on August 24, 2023, after Mr. Dennis was terminated, but it does not indicate what was revised. As I am not considering either termination letter beyond the facts pleaded in the Complaint and cannot confirm this is the exact policy in place at the time of Mr. Dennis's termination, I similarly do not regard the DPS Superintendent Regulation in deciding the Motion to Dismiss.

Fifth, and finally, Mr. Dennis asks me to consider DPS's Media Policy. *See* Resp. to Defs.' Mot. to Dismiss, Ex. 1, ECF No. 14. Mr. Dennis appears to include this exhibit to rebut Defendants' use of the DPS job description for "Executive Principal." *See* Resp. to Defs.' Mot. to Dismiss 15-16. Because I am not considering the job description, I do not rely on the DPS Media Policy in deciding the Motion to Dismiss.

## B.  First Amendment Claims

Mr. Dennis pleads that Defendants terminated his employment in retaliation for exercising his right to free speech during his interview with 9News, which violated the First Amendment. Defendants assert Mr. Dennis's speech in his 9News interview does not merit First Amendment protection for two reasons. First, Defendants argue Mr. Dennis's speech was illegal speech because it violated the Family Educational Rights and Privacy Act ("FERPA"), 20 U.S.C. § 1232g, as well as Colorado Revised Statutes § 19-1-303(2)(a). Second, Defendants argue Mr.

Dennis's speech was made in the course of his official duties as a DPS principal and thus is not insulated from disciplinary measures by his employer. Additionally, the Individual Defendants each assert they are entitled to qualified immunity from Mr. Dennis's First Amendment claims. After reviewing the record before me, I find that Mr. Dennis's speech was not illegal and was not made in the course of his official duties. I also find the Individual Defendants are not entitled to qualified immunity at this juncture.

### 1. FERPA

Defendants argue that Mr. Dennis's speech violated FERPA because "he revealed Student A's educational [and disciplinary] records without alleging he had the written consent of Student A's parents." Mot. to Dismiss 10-11. According to Defendants, Mr. Dennis engaged in "speech . . . facilitating illegal activity," which means "[t]he First Amendment does not shield [him] from discipline," and his First Amendment claims should be dismissed. Mot. to Dismiss 10. I am not persuaded.

In part, FERPA requires withholding federal funding from "any educational agency or institution which has a policy or practice of permitting the release of education records (or personally identifiable information contained therein) . . . without the written consent of their parents to any individual, agency, or organization," subject to specific enumerated exceptions. 20 U.S.C. § 1232g(b)(1). The U.S. Supreme Court has explained that "FERPA's nondisclosure provisions . . . speak only in terms of institutional policy and practice, *not* individual instances of disclosure." *Gonzaga Univ. v. Doe*, 536 U.S. 273, 288 (2002) (emphasis added).

Even if FERPA did make an individual's actions unlawful, based on the record before me, the information disclosed by Mr. Dennis is not covered by the Act. FERPA defines "education records" as those materials that "(i) contain information directly related to a student;

and (ii) are maintained by an educational agency or institution or by a person acting for such agency or institution." 20 U.S.C. § 1232g(4)(A). However, "courts have found that 'once a record is redacted, it no longer contains "information relating directly to a student" and is therefore not an educational record under FERPA.'" *Jones v. Espanola Mun. Sch. Dist.*, No. 13-cv-741-RB-WPL, 2016 WL 10257481, at *2 (D.N.M. May 13, 2016) (quoting *Bd. of Trs., Cut Bank Pub. Sch. v. Cut Bank Pioneer Press*, 160 P.3d 482, 487 (Mont. 2007), *superseded by regulation as noted in Krakauer v. State by & through Christian*, 381 P.3d 524 (Mont. 2016) (noting that FERPA has since expanded its scope to include disciplinary records)); *see also United States v. Miami Univ.*, 294 F.3d 797, 824 (6th Cir. 2002) ("Nothing in the FERPA would prevent the [defendants] from releasing properly redacted records."). Therefore, if the disclosed documents are appropriately redacted to remove a student's personally identifiable information,[3] FERPA is not implicated.

The Parties disagree over whether the documents Mr. Dennis provided to 9News were properly redacted so as to fall outside of FERPA's protection. While Mr. Dennis admits that he "provided the press with documents related to" the student discussed in his interview, he ensured the documents were redacted to "remove all personally identifying information about the student." Compl. ¶ 68. Mr. Dennis pleads that he "was careful not to mention the student's name,

---

[3] "Personally Identifiable Information" includes "(a) The student's name; (b) The name of the student's parent or other family members; (c) The address of the student or student's family; (d) A personal identifier, such as the student's social security number, student number, or biometric record; (e) Other indirect identifiers, such as the student's date of birth, place of birth, and mother's maiden name; (f) Other information that, alone or in combination, is linked or linkable to a specific student that would allow a reasonable person in the school community, who does not have personal knowledge of the relevant circumstances, to identify the student with reasonable certainty; or (g) Information requested by a person who the educational agency or institution reasonably believes knows the identity of the student to whom the education record relates." 34 C.F.R. § 99.3.

age, gender, or any other personally identifying information" during his interview. *Id.* ¶ 67. Defendants argue that the redacted documents violate FERPA because any such disclosure requires "a reasonable determination that a student's identity is not personally identifiable, whether through single or multiple releases, and taking into account other reasonably available information." Mot. to Dismiss 11 (citing 34 C.F.R. § 99.31(b)(1)) (emphasis omitted). Taking the allegations in the Complaint as true, as I must, I cannot find that Mr. Dennis released any materials that would indisputably constitute education records under FERPA.

Defendants also contend that Mr. Dennis does not allege he had the written consent of the student's parents, as required by FERPA. Mot. to Dismiss 10. It is true Mr. Dennis does not allege any facts related to parental permission in his Complaint. Instead, he insists the documents he provided to 9News were properly redacted and anonymized. He thus argues the redacted documents were not education records and the disclosure did not trigger FERPA's parental permission restriction. Resp. to Defs.' Mot. to Dismiss 10-11. Again, at this stage, I cannot find that the documents were "education records" such that parental permission for the disclosure was necessary.

It is unclear whether any information directly related to the student or any personally identifiable information was present on the documents provided to 9News. Nor is it clear whether those materials were redacted in a way to satisfactorily remove them from their status as educational or disciplinary records. Further, without a factual record, it is not possible to ascertain whether Mr. Dennis's determination that the student's identity was not personally identifiable was reasonable.

Because the record does not support a finding that Mr. Dennis's speech or disclosure violated FERPA, I cannot conclude his speech was illegal and unprotected by the First

Amendment. Consequently, I deny Defendants' Motion to Dismiss based on an alleged FERPA violation.

### 2. *C.R.S. § 19-1-303(2)(a)*

In a two-sentence section of their Motion to Dismiss, Defendants argue that Mr. Dennis's speech violates Colorado Revised Statutes § 19-1-303(2)(a) as well. With such little space devoted to the argument, it is unsurprising that Defendants' assertions are conclusory. They comment only that "[r]edacting Student A's name from the records did not cure the violation." Mot. to Dismiss 12.

Section 19-1-303(2)(a) requires that school personnel who obtain information under § 19-1-303(1)(a) "shall maintain the confidentiality of the information obtained." The statute does not define "confidentiality," nor do Defendants provide any case law or substantive analysis to support their bare insistence that Plaintiff's redaction of the information at issue failed to maintain the confidentiality required under the statute.

Without a more developed argument from Defendants, I cannot find that Mr. Dennis's speech violated § 19-1-303(2)(a) and, therefore, deny this portion of Defendants' Motion to Dismiss.

### 3. *Official Duty*

"[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Garcetti*, 547 U.S. at 421. Mr. Dennis claims that, in taking part in the interview with 9News, he spoke as a private citizen.

Defendants state that "speaking with the media about events and procedures at McAuliffe was consistent with the activities Dennis was expected to do as part of his employment." Mot. to Dismiss 14. Thus, Defendants argue, Mr. Dennis's interview was part of his official duties, meaning the First Amendment did not insulate his speech from disciplinary action by DPS.

> In considering a First Amendment retaliation claim, a court must balance five factors:
>
> (1) whether the speech was made pursuant to an employee's official duties; (2) whether the speech was on a matter of public concern; (3) whether the government's interests, as employer, in promoting the efficiency of the public service are sufficient to outweigh the plaintiff's free speech interests; (4) whether the protected speech was a motivating factor in the adverse employment action; and (5) whether the defendant would have reached the same employment decision in the absence of the protected conduct.

*Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227-28 (10th Cir. 2014) (quoting *Dixon v. Kirkpatrick*, 553 F.3d 1294, 1301-02 (10th Cir. 2009)). The first three factors are questions of law, while the fourth and fifth factors are questions of fact. *See id.* at 1228. Defendants challenge Mr. Dennis's claim only on the basis that his speech was made pursuant to his official duties. As such, for the Motion to Dismiss, I will assume Mr. Dennis has sufficiently pleaded all factors except the first.

"[S]peech relating to tasks within an employee's uncontested employment responsibilities is not protected" by the First Amendment. *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1203 (10th Cir. 2007). Tenth Circuit precedent, however, has not set "bright line rules to determine when an employee speaks pursuant to [his] official duties." *McNellis v. Douglas Cnty. Sch. Dist.*, 116 F.4th 1122, 1133 (10th Cir. 2024) (quoting *Rohrbough v. Univ. of Colo. Hosp. Auth.*, 596 F.3d 741, 746 (10th Cir. 2010)). Instead, courts in this circuit "use 'a case-by-case approach, looking both to the content of the speech, as well as the employee's chosen audience, to determine whether the speech is made pursuant to an employee's official duties.'" *Id.* (quoting *Rohrbough*, 596 F.3d at 746).

14

A government employee's speech "retains some possibility of First Amendment protection when it is 'the kind of activity engaged in by citizens who do not work for the government.'" *Foley v. Town of Randolph*, 598 F.3d 1, 6 (1st Cir. 2010) (quoting *Garcetti*, 547 U.S. at 423). It is understood that "speech is made pursuant to official duties if it is generally consistent with 'the type of activities [the employee] was paid to do.'" *Brammer-Hoelter*, 492 F.3d at 1203 (quoting *Green v. Bd. of Cnty. Comm'rs*, 472 F.3d 794, 801 (10th Cir. 2007)). However, just "because an employee's speech was made *at* work and *about* work does not necessarily remove that employee's speech from the ambit of constitutional protection." *Thomas v. City of Blanchard*, 548 F.3d 1317, 1323 (10th Cir. 2008). As my colleague Judge Blackburn has noted, when an "employee's official duties are not so clearly delineated . . . the determination whether [the] speech is protected involves a fact-intensive, 'practical' determination." *Rohrbough v. Univ. of Colo. Hosp. Auth.*, No. 06-cv-00995-REB-MJW, 2006 WL 3262854, at *3 (D. Colo. Nov. 9, 2006) (citing *Garcetti*, 547 U.S. at 424). Thus, this inquiry is not well-suited for a challenge brought in a motion to dismiss, where the parties lack the benefit of discovery, and the court is limited to the well-pleaded allegations in the complaint.

Here, those well-pleaded allegations show that Mr. Dennis spoke to 9News "outside of school hours . . . in his private capacity, though he used his knowledge gained as principal of McAuliffe" and his school office while speaking to the media. Compl. ¶ 66. He chose to speak to the media because he "felt that DPS families needed to know the extent to which DPS had forced" the pat-down policy on its staff, *id.* ¶ 64, and wanted to "publicly criticize DPS for its pat-down policy and refusal to remove" the student at issue, *id.* ¶ 65.

Defendants admit Mr. Dennis was not required by DPS to participate in the interview. Mot. to Dismiss 14. They argue, however, that "speaking with the media about events and

procedures at McAuliffe was consistent with the activities [he] was expected to do as part of his employment." *Id.* This argument is not supported by the allegations in the Complaint. Defendants ask me to assume facts not alleged in the Complaint—and in their favor—which I am prohibited from doing. Further, even if it were a fact that Mr. Dennis's 9News interview was consistent with his official job duties, that does not mean it was impossible he gave that specific interview as a private citizen.

Viewing the allegations in the Complaint as true and in the light most favorable to Mr. Dennis, as I must at this stage, it is plausible that his speech was made as a private citizen and not pursuant to his official duties. Mr. Dennis's speech was not limited to a McAuliffe- or DPS-specific audience. Instead, the intended audience for his speech was the general public via a public news channel. His message, while school related, was the type of criticism a non-government employee, i.e., a private citizen, could make and was made in a forum—a local news channel—available to a private citizen.

Thus, Defendants' argument that Mr. Dennis's speech was not protected by the First Amendment fails, and I deny the related aspects of their Motion to Dismiss.

### 4. *Qualified Immunity*

With Defendants' general challenges to Mr. Dennis's First Amendment claims resolved, I turn to consider the Individual Defendants' contention that they are entitled to qualified immunity from those claims. "[Q]ualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified

immunity balances "the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Id.*

When faced with a qualified immunity challenge, a plaintiff does not have a heightened pleading standard. *See Currier v. Doran*, 242 F.3d 905, 916-17 (10th Cir. 2001). "[T]he customary motion to dismiss standard" applies. *Id.* at 917. Courts must consider two elements when deciding the question of qualified immunity: "whether a constitutional violation occurred, and whether the violated right was 'clearly established' at the time of the violation." *Armijo ex rel. Armijo Sanchez v. Peterson*, 601 F.3d 1065, 1070 (10th Cir. 2010) (citation omitted). The "elements necessary to establish a § 1983 . . . violation 'will vary with the constitutional provision at issue." *Pahls v. Thomas*, 718 F.3d 1210, 1229 (10th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 676). A "clearly established" right is "one that is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

To show the right is clearly established, "'there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains.'" *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (quoting *Klen v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011)). The law "do[es] not require a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011). More specifically, "the clearly established law must be 'particularized' to the facts of the case," *White v. Pauly*, 580 U.S. 73, 79 (2017) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)), but does not need to "have identical facts," *Patel v. Hall*, 849 F.3d 970, 980 (10th Cir. 2017). "The

dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (quoting *Ashcroft*, 563 U.S. at 742).

As the analysis above explains, Mr. Dennis has sufficiently pleaded his First Amendment claims to survive a motion to dismiss. Therefore, at this stage of the proceedings, Mr. Dennis overcomes the first prong of the qualified immunity inquiry: whether the Individual Defendants' actions violated the First Amendment. The second question is whether the First Amendment violation was "clearly established" at the time the violated occurred.

The Individual Defendants argue "[t]here is no Supreme Court or Tenth Circuit decision [establishing that] the First Amendment protects speech by a senior government administrator serving as the public face of that administrator's department, concerning events taking place in the department, and grounded solely in knowledge garnered from the administrator's job duties," which would have put them on notice their conduct was unconstitutional.[4] Mot. to Dismiss 18. This misstates the standard. "The dispositive question is 'whether the violative nature of *particular* conduct is clearly established.'" *Mullenix*, 577 U.S. at 12 (quoting *Ashcroft*, 563 U.S. at 742). "It has long been established law in this circuit that when a public employee speaks as a citizen on matters of public concern to outside entities despite the absence of any job-related reason to do so, the employer may not take retaliatory action." *Thomas*, 548 F.3d at 1328 (quoting *Casey v. W. Las Vegas Indep. Sch. Dist.*, 473 F.3d 1323, 1333-34 (10th Cir. 2007)).

The conduct at issue here is that Defendants terminated Mr. Dennis for his speech. The allegations in the Complaint show Mr. Dennis "spoke to a reporter . . . in his private capacity," and Defendants admit that he was not required to participate in the interview by DPS. Mr.

---

[4] The Individual Defendants claim the "authority suggests the opposite is true," Motion to Dismiss 18, but fail to provide such authority.

Dennis used his interview with 9News "to inform the public of a matter that greatly impacted DPS students and families"—the DPS pat-down policy used at McAuliffe. Compl. ¶ 66.

Therefore, under the Rule 12(b)(6) standard, I deny the application of qualified immunity to the Individual Defendants against Mr. Dennis's First Amendment claims.

### C. Fourteenth Amendment Claims

Mr. Dennis pleads two claims of relief under the Fourteenth Amendment. First, he claims Defendants deprived him of a liberty interest without due process by making false statements during his termination that impugned his good name and reputation. Second, he claims Defendants deprived him of a property interest in continued employment without due process by failing to obtain NDIZ's approval before his termination. Defendants put forward three reasons why Mr. Dennis's due process claims should be dismissed. First, they argue that Mr. Dennis's liberty-interest claim fails because he was offered an opportunity to participate in a name-clearing hearing. Second, they contend that Mr. Dennis cannot pursue a property-interest claim because he did not have a property interest in continued employment as McAuliffe's principal. Finally, the Individual Defendants each assert qualified immunity from Mr. Dennis's Fourteenth Amendment claims. Based on the record before me, I find that Mr. Dennis sufficiently pleaded facts related to his liberty-interest claim to survive the Motion to Dismiss and that the Individual Defendants are not entitled to qualified immunity on this claim. Mr. Dennis, however, did not plead sufficient facts to survive the Motion as related to his property-interest claim.

The Fourteenth Amendment prohibits the state from "depriv[ing] any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. "The requirements of procedural due process apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property." *Bd. of Regents of State*

*Colls. v. Roth,* 408 U.S. 564, 569 (1972). In a procedural due process analysis, I must ask "two questions: (1) Did the plaintiff possess a protected property or liberty interest to which due process protections apply? And if so, (2) was the plaintiff afforded an appropriate level of process?" *Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1172 (10th Cir. 2016); *see also Bd. of Regents of State Colls.*, 408 U.S. at 569-70. Any liberty interest asserted is separate from any property interest a public employee may or may not have in his or her position. *See McDonald v. Wise*, 769 F.3d 1202, 1212 n.2 (10th Cir. 2014).

### 1. Liberty Interest

"A public employee has a liberty interest in his good name and reputation as they relate to his continued employment." *Id.* at 1212. If the public employee can prove the elements of a liberty-interest claim, he or she must then plead facts sufficient to prove the governmental entity did not provide the process due, which is an adequate name-clearing hearing. *See Workman v. Jordan*, 32 F.3d 475, 480 (10th Cir. 1994). Defendants do not "contest the elements of Dennis' liberty-interest claim." Reply in Supp. of Mot. to Dismiss 12, ECF No. 17. Rather than attacking the elements of his claim, Defendants assert that Mr. Dennis was offered a name-clearing hearing and, as such, his Fourteenth Amendment liberty-interest claim must fail. Thus, in considering the Motion to Dismiss, I assume Mr. Dennis sufficiently pleaded facts to satisfy his liberty-interest claim,[5] and I focus my analysis on whether Mr. Dennis has sufficiently pleaded facts to support a reasonable inference that Defendants denied him due process by not providing him an adequate

---

[5] To survive a motion to dismiss on a liberty-interest claim, a plaintiff must plead facts sufficient to prove the government (1) made a statement that impugned the employee's good name, reputation, honor, or integrity; (2) the statement was false; (3) the statement was made during the course of termination and foreclosed other employment opportunities; and (4) the statement was published, i.e., disclosed publicly. *See Workman*, 32 F.3d at 481.

name-clearing hearing. *See McDonald*, 769 F.3d at 1213 ("Because [plaintiff's] liberty interest claim was dismissed under Rule 12(b)(6), we examine whether he has alleged sufficient facts to support a reasonable inference that he was denied due process. . . .").

"A name-clearing hearing 'gives the plaintiff an opportunity to hear and answer firsthand any stigmatizing charges, clearing his name of any false statements made about him, and curing the injury to his reputation.'" *Id.* (quoting *Patterson v. City of Utica*, 370 F.3d 322, 335 (2d Cir. 2004)). The hearing must adhere to the requirements of the Due Process Clause. In *Mathews v. Eldridge*, 424 U.S. 319 (1976), the Supreme Court set out a three-factor balancing test courts now use in determining whether a plaintiff pleaded sufficient facts alleging a defendant failed to provide the process due. The factors are: "(1) 'the private interest that will be affected by the official action'; (2) 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards'; and (3) 'the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'" *McDonald*, 769 F.3d at 1213 (quoting *Mathews*, 424 U.S. at 335). Because Defendants' Motion is a motion to dismiss, I "examine whether [Mr. Dennis] has alleged sufficient facts to support a reasonable inference that he was denied due process" under the *Mathews* balancing test. *Id.* The Tenth Circuit has explained that a post-termination hearing "is understood to include the right to representation by an attorney and the right to cross-examine adverse witnesses." *Workman*, 32 F.3d at 480.

To start, I look to the allegations in the Complaint regarding Mr. Dennis's interest that was impacted by Defendants' statements: his reputation. As the Tenth Circuit has suggested, I "keep the degree of harm [to Mr. Dennis's reputation] in mind because the greater the harm to an

individual's reputation, the greater the corresponding process should be." *McDonald*, 769 F.3d at 1213. Before the events that led to this lawsuit, Mr. Dennis enjoyed a strong, positive reputation: he was rated at 90% or higher in DPS staff surveys and received "exemplary reviews" from those in his school community, Complaint ¶ 44. After his termination and Defendants' statements about him, Mr. Dennis has sought employment in other school districts and has failed to find a comparable position because the statements made by Defendants "have so tarnished his reputation that no employer will hire him." Compl. ¶¶ 90-91. As a result of his inability to secure a new position, Mr. Dennis claims he has "suffered injuries, damages and other losses, including but not limited to lost wages and benefits, damage to his reputation, and emotional distress." Compl. ¶ 154. Mr. Dennis's interest in his good name and reputation was impacted by Defendants' actions. The Defendants' statements caused substantial harm to Mr. Dennis's reputation: he has gone from a high-performing, well-known principal to being unable to secure any new, comparable employment. Thus, the process afforded to him must be similarly substantial.

Next, I look to the risk of the erroneous deprivation of Mr. Dennis's interests because of the procedures provided and whether additional procedures would have helped reduce said risk. "In the liberty context, the risk to be considered has been defined as the risk that the charges 'will go unrefuted and that [plaintiff's] name will remain stigmatized.'" *McDonald*, 769 F.3d at 1213 (quoting *Segal v. City of New York*, 459 F.3d 207, 215 (2d Cir. 2006)). Again, at the motion to dismiss stage, I am required to accept all well-pleaded facts in the Complaint as true.[6] *See Moore*, 438 F.3d at 1039. Mr. Dennis pleads that "Defendants never offered [him] an opportunity for a public name-clearing hearing" and he was not "offered an opportunity to present evidence

---

[6] As discussed above, I am not considering any of the extrinsic evidence or related arguments the Parties attempted to introduce through their Motion to Dismiss briefing. *See supra* Section III.A.

and confront accusers before a decisionmaker." Compl. ¶ 92. The risk of the charges against Mr. Dennis remaining unrefuted and his name remaining stigmatized is great: he pleads facts, which I must accept as true as this juncture, that he received no opportunity to clear his name.

Mr. Dennis further states that he "received an 'urgent' phone call from DPS Director of Human Resources Debra Watson" to participate in a twenty-minute interview for a "'fact-gathering investigation' to determine if" Mr. Dennis violated Board of Education policies. Compl. ¶ 74. He was not provided any other opportunity to present evidence or defend himself. *See* Compl. ¶ 92. From the face of the Complaint, it appears that only Ms. Watson and Mr. Dennis participated in this DPS interview. Mr. Dennis did not have the opportunity to be represented by counsel, and he was unable to cross-examine any adverse witnesses, as the Tenth Circuit necessitates. He has sufficiently pleaded facts that support an inference that proper process was not provided to him even if the DPS interview was intended to be a name-clearing hearing.[7]

Lastly, I consider the government's interest. Public entities, such as DPS and the DPS Board of Education—of which six of the seven Individual Defendants are members—are generally entitled to make personnel decisions without federal court involvement. *See, e.g.*, *Bishop v. Wood*, 426 U.S. 341, 349-50 (1976). Defendants have a recognized interest in making and explaining personnel decisions when such is a matter of public concern, as in this case when a well-known school principal was terminated. *See McDonald*, 769 F.3d at 1213. These entities and individuals, however, are not entitled to deprive employees of due process when making such decisions, and an adequate name-clearing hearing within the bounds of the Tenth Circuit's

---

[7] While Defendants argue that Mr. Dennis was offered a name-clearing hearing, their argument rests solely on evidence outside of the Complaint. I am not considering such evidence during the motion to dismiss stage.

and Supreme Court's requirements must be provided. Mr. Dennis has sufficiently pleaded facts that his liberty interest was harmed and Defendants failed to provide the constitutionally required process.

The balance of these factors weighs in favor of Mr. Dennis, and the facts pleaded support a reasonable inference that he was denied due process. I therefore deny the related aspects of Defendants' Motion to Dismiss on Mr. Dennis's liberty-interest claim.

### 2. *Qualified Immunity*

The Individual Defendants argue they are entitled to qualified immunity from Mr. Dennis's Fourteenth Amendment liberty-interest claim.

As previously explained, the Individual Defendants entitlement to qualified immunity depends on "whether a constitutional violation occurred, and whether the violated right was 'clearly established' at the time of the violation." *Armijo ex rel. Armijo Sanchez*, 601 F.3d at 1070 (citation omitted). I have concluded that Mr. Dennis's well-pleaded facts support a reasonable inference that Defendants denied him due process on his liberty-interest claim, thus violating a clearly established constitutional right.

Tenth Circuit law requires "a plaintiff to 'identify *specific* actions taken by *particular* defendants' in order to make out a viable § 1983 . . . claim." *Pahls*, 718 F.3d at 1226 (quoting *Tonkovich v. Kan. Bd. of Regents*, 159 F.3d 504, 532 (10th Cir. 1998) (emphases added)). To overcome the Individual Defendants' qualified immunity claim at the motion to dismiss stage, Mr. Dennis must plead facts of specific actions performed by each of the Individual Defendants that he alleges violated his Fourteenth Amendment liberty interest. Mr. Dennis has met this burden for the seven Individual Defendants.

The Complaint alleges that Superintendent Marrero "announced that he was terminating Mr. Dennis," which brings Superintendent Marrero's conduct sufficiently into play: He was the individual to publicly terminate Mr. Dennis's employment on allegedly false pretenses, which led to harming his good name and reputation. Compl. ¶ 80. Mr. Dennis claims that Mr. Anderson, Mr. Esserman, and Ms. Quattlebaum publicly distributed Mr. Dennis's termination letter at a public town hall meeting, which included allegedly false, damaging statements about Mr. Dennis and his termination. *See id.* ¶ 82. Mr. Dennis further maintains that Mr. Anderson reported Mr. Dennis to the Denver Police Department for his allegedly criminal conduct, publicly stated he had "received whistleblower reports" that Mr. Dennis inappropriately use the de-escalation room at McAuliffe, and held a press conference during which he accused Mr. Dennis of using the de-escalation room only for students of color. *See id.* ¶¶ 83, 88, 97. Additionally, the Complaint alleges that Mr. Anderson, Mr. Esserman, and Ms. Gaytán all referred to the de-escalation room as an "incarceration room" in an attempt "to turn public opinion against Mr. Dennis." *Id.* ¶ 88. Finally, the Complaint specifically pleads that the DPS Board of Education voted 6-1 to terminate Mr. Dennis from his position based on alleged false pretenses. *See id.* ¶¶ 93-95. The members who voted in favor of his termination were Mr. Anderson, Mr. Esserman, Ms. Quattlebaum, Ms. Gaytán, Ms. Olson, and Ms. Lindsay.

Therefore, at this stage, I find the Individual Defendants are not entitled to qualified immunity against Mr. Dennis's Fourteenth Amendment liberty-interest claim.

### 3. *Property Interest*

Regarding Mr. Dennis's property-interest claim, Defendants argue that because Mr. Dennis points only to a contract between DPS and NDIZ, he fails to plead facts showing he has a property interest in his continued employment at DPS.

"A public employee has a property interest in his continued employment where 'state or local law creates a sufficient expectancy of continued employment.'" *McDonald*, 769 F.3d at 1210 (quoting *Driggins v. City of Okla. City*, 954 F.2d 1511, 1513 (10th Cir. 1992)). However, a plaintiff "must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Bd. of Regents of State Colls.*, 408 U.S. at 577. A plaintiff's property interest may also arise "from implied agreements or statutory or administrative procedures." *Weathers v. W. Yuma Cnty. Sch. Dist. R-J-1*, 530 F.2d 1335, 1337 (10th Cir. 1976).

Mr. Dennis does not ground his alleged property interest, i.e., his entitlement to continued employment, in any contract—express or implied—to which he is a party. Nor does he point to any Colorado law, regulation, or agreement to support his property-interest claim.[8] Mr. Dennis instead relies on what he refers to as the "NDIZ-DPS contract for McAuliffe International School." Compl. ¶ 79. He claims that because DPS failed to consult with his NDIZ supervisor, Colleen O'Brien, or anyone associated with NDIZ before terminating him, DPS violated that contract. He attempts to claim this failure deprived him of his Fourteenth Amendment property interest in his continued employment. Mr. Dennis, however, does not plead that he is a party or intended beneficiary to the DPS-NDIZ contract. Thus, Mr. Dennis can be nothing more than an

---

[8] Although Mr. Dennis does not raise this in his Complaint or Response, Colorado Revised Statutes § 22-32-126(1) provides that "[t]he board of education may employ through written contract public school principals who shall hold valid principal licenses or authorizations and who shall supervise the operation and management of the school and such property as the board shall determine necessary." There is no discussion in the Complaint or Motion to Dismiss briefing of a contract between DPS and Mr. Dennis.

incidental beneficiary; this status confers no property-interest entitlement onto him. *See, e.g.*, *Martin Marietta Materials, Inc.*, 810 F.3d at 1177 ("a non-party to the contract who gained from it an incidental benefit had no property interest entitling him to due process") (citing *Biby v. Bd. of Regents*, 419 F.3d 845, 852 (8th Cir. 2005)).

Mr. Dennis alleges sufficient facts to establish a reasonable inference that DPS did not follow its contract with NDIZ, but that, if anything, amounts to a breach of contract issue between NDIZ and DPS—not a violation of Mr. Dennis's constitutional rights. As such, I grant Defendants' Motion to Dismiss Mr. Dennis's Fourteenth Amendment property-interest claim.[9]

### IV.     Conclusion

Accordingly, Defendants' Motion to Dismiss is GRANTED IN PART in that Defendants have shown Mr. Dennis's Fourteenth Amendment property-interest claim is untenable. Mr. Dennis's Fourteenth Amendment property-interest claim against all Defendants is, therefore, DISMISSED. The Motion is otherwise DENIED.

DATED this 24th day of December, 2024.

_____
JOHN L. KANE
SENIOR U.S. DISTRICT JUDGE

---

[9] Because I am dismissing the property-interest claim, the Individual Defendants' qualified immunity argument related to the property-interest claim is moot, and I do not analyze that argument further.