IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-2257-JLK

KURT DENNIS,

Plaintiff,

vs.

SCHOOL DISTRICT NO. 1 et al,

Defendants.

---

REPORTER'S TRANSCRIPT

Motions Hearing

---

Proceedings before the HONORABLE JOHN L. KANE, Judge, United States District Court for the District of Colorado, commencing on the 8th day of December, 2025, in Courtroom A802, United States Courthouse, Denver, Colorado.

APPEARANCES

For the Plaintiff:
DAVID A. LANE, Kilmer Lane LLP, 1543 Champa Street, Suite 400, Denver, CO 80202

For the Defendant:
JONATHAN P. FERO and MICHAEL B. CASE, Semple Farrington Everall & Case PC, 1120 Lincoln Street, Suite 1308, Denver, CO 80203

Reported by KEVIN P. CARLIN, RMR, CRR, 901 19th Street, Room A259, Denver, CO 80294, (303)335-2358

Proceedings reported by mechanical stenography; transcription produced via computer.

P R O C E E D I N G S

(Proceedings commenced at 10:36 a.m.)

THE COURT: This is case number 23-cv-2257, Kurt Dennis versus School District Number One and others. The matter before the Court is a motion to compel a third party, Channel Nine, KUSA-TV, or referred to as 9News, to comply with a subpoena duces tecum filed by the defendant, Denver Public Schools, in this case that I've previously numbered, Dennis versus the School District Number One.

The parties' briefing is thorough, and I ordered oral argument today, which I expect from both parties and the nonparty, 9News. We will begin with the -- my statement on the background of the case. Then I will have the lawyers enter their appearances for the parties. And then the movement -- movant will begin, and then the Channel 9News, and then the plaintiff's counsel, and then any rebuttal from the defense counsel.

The case is one that has the following relevant background. The plaintiff, Kurt Dennis, served as McAuliffe International School's principal from 2012 until 2023. Two days after an East High School shooting in 2023, during which a student injured two school administrators with a firearm found during a pat-down, Mr. Dennis spoke with 9News about DPS's pat-down policy. During this interview, he also discussed DPS's refusal to remove a McAuliffe student from campus after that

student was charged with possession of an illegal firearm and later eight additional charges, including attempted murder.

Mr. Dennis claims he spoke about the McAuliffe student, but did not mention the student's name, age, gender, or any other personally identifying information. He also provided 9News with redacted documents related to the student and the relevant charges. In his response, Mr. Dennis states that he used a black marker to redact personal identifying information from all the documents that he provided to 9News.

DPS, however, argues that on the portion of one of the documents displayed during the 9News broadcast, the redaction was made with a, quote, clean edged black box, as is typical when redaction is done electronically, close quote. In its reply, DPS also states documents produced by Mr. Dennis in a supplementary discovery response were not identical to those he previously produced.

Mr. Dennis was fired shortly after this interview, and he then brought this 1983 suit. He claims defendants violated his First Amendment rights by terminating his position as McAuliffe's principal because he gave an interview to 9News, which he states was done in his personal capacity after hours. Defendants argue that Mr. Dennis' speech was not protected by the First Amendment because it violated federal and state law, and thus his termination was permissible.

The issues as I see them presently, and counsel can add

to them as they wish, are as follows for this oral argument: DPS's subpoena seeks three categories of materials from 9News. One, raw or source footage of the television story containing communications by Kurt Dennis. Two, all documents provided to 9News by Kurt Dennis in conjunction with the television story or internet article in the form they were provided to 9News. And three, all documents provided to 9News reporter Chris Vanderveen by Kurt Dennis in conjunction with the television story or internet article in the form they were provided to Chris Vanderveen. The subpoena seeks nonbroadcast information and documents that may or may not have been published. DPS seeks to compel 9News to comply with the subpoena.

In my order to dismiss previously entered, I stated, and I quote, if the disclosed documents are appropriately redacted to remove the student's personal identification number, FERPA, F-E-R-P-A, is not implicated, close quote. The parties disagree on whether the documents Mr. Dennis provided to 9News were properly redacted, which is why DPS is seeking these materials for 9News.

I've outlined my understanding of the issues and the background of the case. You're free to add to them as you wish. But before we begin, I would like the attorneys, starting with the plaintiff's attorney, and then the defendants' attorney, and then Channel Nine's counsel, to enter their appearances.

MR. LANE: Good morning, Your Honor. David Lane from

Kilmer Lane on behalf of Kurt Dennis, the plaintiff.

THE COURT: Thank you.

MR. FERO: Good morning, Your Honor. John Fero, and with me is Brent Case on behalf of defendants.

THE COURT: Thank you.

MR. ZANSBERG: Good morning, Your Honor. Steven Zansberg from Zansberg Beylkin on behalf of 9News.

THE COURT: All right. Thank you. I will ask, since I'm not -- some of you lawyers are familiar with what I do here, and others are not, but I would ask you to make your remarks from the lectern, and to speak up clearly with more vitality than the fans in Las Vegas did last night. Because please understand that I had -- I'm hearing impaired, and the court reporter is taking this down in a technology called real-time, and it's printed for me here on the screen. So, you will see me looking at the screen, when you're wondering why I'm not looking at you, but that's the reason is so that I can read as well as hear at the same time. Is that clear?

MR. LANE: Yes, Your Honor.

THE COURT: Okay. I don't have any time limits. I have an attention deficit disorder. So, when you start repeating, I stop reading -- listening. Okay? All right. Let's hear from the --

MR. LANE: Your Honor?

THE COURT: Channel Nine first. Excuse me. From the

school district first.

MR. LANE: Your Honor, I hate to interrupt. I think if we can switch the order, I think I may obviate a lot of the argument.

THE COURT: Okay.

MR. LANE: And moot things, if I may?

THE COURT: You want to go first?

MR. LANE: Yes. If I may? Thank you.

THE COURT: That's fine.

MR. LANE: Thank you, Your Honor. The issues in this case involving Channel 9News are latent with issues about privilege, reporter's privilege, things of that nature. Kurt Dennis has no such privilege, and counsel for the defendants have asked in discovery for basically exactly what they want from 9News.

We had provided defendants with discovery, and there was a Dropbox that we came across several weeks ago that had -- it was a mislabeled Dropbox. We opened it up, and apparently there were more documents. The document we provided to the defendants in discovery was very well redacted. The document in the Dropbox was very sloppily redacted, and it looked like a black magic marker had been taken over the name of the student involved.

THE COURT: Let me interrupt you for just a moment. I am not quite familiar with the term "Dropbox" or where it was.

MR. LANE: Okay. It's an electronic method of transferring large numbers of files from one computer to another.

THE COURT: So, it's not a box?

MR. LANE: It is not a box. It's -- if you try to attach too many documents to an email, it doesn't go through. So, you do it in a Dropbox, and everything is fine. So, we opened up the Dropbox, and we discovered that the documents in the Dropbox -- some of the documents in the Dropbox showed a very sloppy redaction effort by Mr. Dennis. We looked at this, and we -- when you blow it up, you can see the name of the student.

We said, okay. We owe them this discovery. We promptly sent it to them. They then noticed it, obviously, and so they -- they have in their possession the Kurt Dennis -- Kurt Dennis had two forms of redaction. He inadvertently sent the sloppy redaction to 9News. So, 9News presumably did have the name of the student on the sloppy -- sloppily redacted document. 9News apparently has not revealed that to anyone, and this is a sloppy mistake by Kurt Dennis.

We -- he had two -- two forms of the document. One was the sloppy form. One was the electronically redacted form. We thought the electronically redacted form was the one that got sent to 9News. When we discovered that was not the case, we immediately sent the other one off to counsel.

So, everything they're seeking from 9News, we believe Kurt Dennis has already given them, including the badly redacted documents and a full admission by Kurt Dennis that, yes, you can see the name of the student if you blow up the sloppy redaction. It shows through on the magic marker. And it was an inadvertent mistake on his part, but I believe they have everything now that 9News has. Thank you.

THE COURT: Thank you. Ready to proceed?

MR. FERO: Yes. Thank you, Your Honor. Your Honor, we're here because the Denver Public Schools is trying to conduct third-party discovery just to get to the bottom of what happened with this 9News interview, and specifically what Mr. Dennis gave to 9News. And we're here because 9News won't produce anything.

And we've heard Mr. Lane here this morning say, well, you've got everything that Mr. Dennis says he gave 9News, but that's not the point. The point is we're trying to get 9News to tell us what they received from Mr. Dennis. That's why we're here. The only thing they have produced in response to a significantly narrowed subpoena is the -- what we can actually get online, which is the broadcast interview.

I don't think the reporter's privilege factors are in dispute. I think they're clearly established by the Tenth Circuit: relevance, necessity, availability, and the nature of the information. The Court has to do a balancing test,

evaluating the purpose of the privilege and weigh the First Amendment, and then the need of party for discovery.

DPS has met all of those factors here, and strongly so. What Dennis provided to 9News is centrally relevant to the First Amendment complaint and information. You read from the order this morning on the motion to dismiss. Clearly, this goes to something that DPS needs for its defense. Its defense is as you recognize, that Mr. Dennis, his speech on 9News was illegal. That is not protected, because it violated FERPA and a separate State statute for criminal justice records.

To prove that defense, this Court has said that DPS needs to establish what Mr. Dennis provided to 9News. Therefore, from that to determine whether the redactions -- what redactions were made to what extent, were they reasonable, all of that therefore to determine whether his speech was legal or illegal.

Now, yes, we've tried to get this information. We've exhausted our other sources. We've asked Mr. Dennis to give us what he produced to 9News. There's several problems with this in terms of just why don't we just stop it there and say, well, he said that he gave two sets of documents. First of all, at a fundamental level, DPS shouldn't just have to take Mr. Dennis' word for it, or his counsel's word for it, frankly.

We're entitled to explore whether there's any evidence out there that corroborates or does not corroborate or impeaches

this position. We're entitled to explore evidence that would test his credibility on a very, very seminal, critical issue in this case.

Now, Mr. Dennis has given us two sets of documents that lead us very strong reason to question his credibility in any event. On page three of our motion to compel, we show you a screenshot from the interview that was broadcast on TV. And if you can look at that screenshot and compare it to the excerpt of one page that Mr. Dennis produced to us, you can see some very interesting discrepancies right there.

So, first of all, the 9News screenshot from the interview, this is the document that says administrative transfer request. It has a very clean black box, and administrative transfer request for blank has been denied. It's a very clear document. The image quality is very high, and this -- the lines around this redaction are perfectly drawn. It looks -- as you recognized in your opening remarks, it looks as if it's been drawn electronically. It's perfectly symmetrical.

Now, on page three of the motion to compel, we gave it to you as well as Exhibit B to our motion, you can see the document that Mr. Dennis says he produced. Administrative transfer request. It's got, just like has been represented, black magic marker lines that look like they're hand drawn because they are not perfectly symmetrical and clean. They're wavy. And the image quality is very poor. That alone suggests

that what's been given to us from Mr. Dennis isn't exactly what was provided to 9News. How can that discrepancy be explained? That's what we're trying to get to the bottom of here.

Now, 9News has stated in their response that this was a station-produced composite. Again, are we to take Mr. Zansberg's word on behalf of 9News? We need to see the documents. We need to see what they say they got from Mr. Dennis.

It also begs the question, when you look at just these two -- the discrepancy here, was this station-produced composite added on top of the black magic marker line, or did 9News get an unredacted copy of these documents or even maybe this page, and it added that redaction to it? We're entitled to know that information. It goes to a critical issue in this case. Did Mr. Dennis make the redactions? If he did, when did he make them? And did -- are all of them made at the same time? Are there -- how many versions of these documents are floating out there?

Now, as has been stated by Mr. Lane today, after we moved to compel -- so, back up a second. After we served our motion, excuse me, and subpoena, after we moved to compel, after plaintiff and 9News responded, Mr. Dennis supplemented his discovery with another set of documents. And you have both of them submitted with our motion. We had to submit them as restricted documents, because they contain personally

identifiable information of the student.

You have Exhibit H, which is the first set that Mr. Dennis produced to us. And then you have Exhibit I, which is the second set that was produced to us. It's pretty straightforward, Your Honor. I have copies for you printed if it's helpful for you. I don't know if you have them in front of you up there.

THE COURT: Thank you.

MR. FERO: Would you like them?

THE COURT: No. I have them.

MR. FERO: Okay. Very good. Thank you. And if you look and compare these, you will see that the ordering is a little bit different. Pages are not in the exact same order. Okay. Maybe that's innocent enough. But the image clarity is unmistakable. Exhibit H, the first set, is grainy. It's blurry. It's hard to see. There's a lot of gray scale noise in that image. The Exhibit I, very clear. Okay? All right?

Also, you can -- here is what's also interesting about Exhibit H and I. And I wasn't quite clear from what Mr. Lane was saying. The suggestion was almost that somehow they were redacted at different times where one was sloppy and the other one wasn't. But if you look at them, I mean, they both appear to have magic marker hand redactions on them. So, it's not like one of them was ever electronically redacted. Is doesn't appear that way at all.

Both of these documents appear to be hand redacted with magic marker lines. But again, critical difference is that on the second set here, Exhibit I, you can see through the magic marker lines. You can clearly read the student's name. You can read their date of birth, their last known address, the DA's case number. And that's just on the very first page. And you can see that on several pages in this exhibit.

Okay. Well, was this a scanning issue? Is this a technology impediment here? Does that explain the difference between these two documents? We would say that's not enough to stop this, but more importantly, and critically, if you compare page eight of Exhibit I with page nine in Exhibit H, it's the same document. Again, the order is different. That's why they're on two different pages. On Exhibit H at the top we see the student's name has got a black magic marker line over their name. On Exhibit I it's not there. That raises all sorts of interesting questions.

Even more -- and they're all relevant to the legality of Mr. Dennis' speech. Why was this marker missing this line -- this line missing from one page? Did Mr. Dennis produce both sets of these documents to 9News? What's the difference between them? When were these redactions made? Were some or all of them added after the interview? Did 9News and/or Mr. Vanderveen get unredacted copies? We can't answer these questions with just what we have here.

Now, DPS -- excuse me -- the plaintiff and 9News have said, well, you're not done with discovery. Go depose Mr. Dennis. Well, trust me, Your Honor, we definitely intend to depose Mr. Dennis, but we need these documents from 9News before, not after that deposition, to be able to confront him and probe his credibility on this critical issue. We're just trying to uncover the truth here. We have to be able to test what he says he provided with what 9News says they received. And we shouldn't have to take any attorney's word for it or any party. We want to see the documents. That's all we're asking for.

Now, go back under the motion to dismiss stage, and the argument in this case from the plaintiff was that he made all the necessary redactions, he was 100 percent anonymous, et cetera. It's unclear what he's going to argue now on this critical issue in this case, but I think it is -- it appears to be a binding admission by his counsel today, too, that at a minimum, the redactions that he made were sloppy, and that you can see the student's name. We're just trying to find out exactly what happened with this interview and what exactly he provided to 9News.

Now, another point I want to make, we don't even know if 9News -- to what extent what they have, because they've refused to provide even a privilege log that would identify that they, A, have documents, and B, what exactly they are.

Presumably, they have some, or they wouldn't be contesting this subpoena, but that's reason enough that the Court could compel production of this subpoena.

And I want to close my remarks just kind of taking a step back and thinking about the reporter's privilege. As I've been speaking mostly here today about the DPS's strong need for this documentation from 9News, what is really the purpose of the reporter's privilege? I mean, I think you have to consider this is not a story that was generated and then never produced or never published. We have a published story here.

It's also not something where Mr. Dennis was a confidential informant. Mr. Lane has acknowledged that this morning in the beginning of his remarks. He said Mr. Dennis has no such privilege at stake here. We agree. This isn't about 9News protecting anyone as a confidential informant or confidential source. We significantly narrowed the subpoena to make sure after conferral that it only sought the -- first, the unedited source video, raw footage, only as to Mr. Dennis, which the Court acknowledged during the scheduling conference offhand that we should get that.

And we're only asking for the documents that Mr. Dennis gave to either 9News or Mr. Vanderveen. Apparently there's other folks who gave documents to 9News. We're not asking for those anymore. We have withdrawn that. So, what is the -- what is really at stake here? We have a plaintiff who went on a

local news, was on camera, his identity in full disclosure. The documents are shown on screen. What is being protected to quash the subpoena at this point that has anything to do with the reporter's privilege? It seems extremely, extremely minimal here.

And what is not minimal, but what is very strong is the strong need for this documentation. So, these are the reasons why, and I would reserve the right of course to come back for rebuttal as you offered, but we do ask that you compel the subpoena for Denver Public Schools. Thank you.

THE COURT: Thank you.

MR. FERO: I'm happy to address any questions if you have them.

THE COURT: I have no questions. Go ahead.

MR. FERO: Thank you.

THE COURT: Mr. Zansberg?

MR. ZANSBERG: Thank you, Your Honor. Mr. Fero spent much of his time showing the discrepancy between the first set of documents produced by Mr. Dennis and what was shown on the screen, including, as he stated as an officer of the court, I represented that 9News created the composite of the document that is also Exhibit I, page eight. And he said this raises all sorts of questions, and we just want to know whether or not Mr. Dennis' speech on 9News is protected.

And I would first point out that his speech on 9News

was not the documents. So, if the argument Mr. Fero and DPS wants to make is that Mr. Dennis' speech on 9News was unlawful and therefore justified their dismissal of him, termination of his contract, then it should be limited to his speech on 9News, and whether or not he provided other documents is entirely irrelevant.

They did not terminate Mr. Dennis based upon documents he provided to 9News, and nothing has been said here that suggests that that was the basis for his termination. But Mr. Fero continued and said we should be able to find out exactly which documents, and exactly what happened. We're just -- we're interested to know exactly what happened here, but the question for the Court in applying the First Amendment privilege of 9News is why? Why do we need to know that? The First Amendment privilege that -- in the *Silkwood* case, the Tenth Circuit established -- and in *RE/MAX International versus Century 21*, this District Court has applied numerous times, requires that the information sought be central, goes to the heart of the matter, and that it can't be available from any other means.

So, the real question is why? Why does DPS need to know what documents were provided? And the situation has -- as Mr. Lane pointed out, there's been a dramatic and dispositive change in the circumstances since both the motion to compel was filed and 9News' response was filed. At that time, when those

filings occurred, DPS was speculating that perhaps Mr. Dennis had provided KUSA with other documents than the ones he produced to them that revealed the student's identity, and such additional documents could justify DPS's termination decision.

Subsequently, Mr. Dennis supplemented his document production and produced a different version, as Mr. Lane explained, of the same documents, which showed that, as he put it, they had been sloppily redacted, using a magic marker instead of a Sharpie or something more opaque, less translucent.

And one doesn't have to blow those documents up. One can just look at them and see them. And they do in fact divulge the student's identity, the student number. There's no -- there's no dispute about that. In fact, the document that Mr. Fero points Your Honor to, Exhibit I, page eight, there is no redaction whatsoever at the very top of the document, the student's name and -- and student number are revealed without any redaction, sloppy or otherwise.

So, as things stand today, there's simply no way DPS can meet its burden to overcome my client's constitutional privilege. DPS now has definitive and unequivocal proof that plaintiff, even if inadvertently, disclosed the student's name and student number to KUSA, 9News, and DPS can present that evidence to the Court or to a jury for whatever purpose such evidence may serve. Thus, any documents that are in KUSA's possession that similarly show the same thing, disclosure of the

student's identity, would be completely cumulative, and therefore it cannot be shown to be necessary for DPS's defense.

In light of the changed circumstances since our response was filed, I'd like to point the Court to the following authorities, because we didn't know of this production obviously when we filed our response. And these authorities all hold that a subpoena seeking cumulative evidence does not overcome a newsperson's First Amendment privilege. And by the way, while Mr. Fero might have the view that unreported news information in the hands of journalism organizations doesn't deserve significant protection under the First Amendment, the Courts unanimously disagree with him, but he's entitled to his opinion in that regard.

This Court, I will read from *RE/MAX International versus Century 21 Real Estate*, 846 F. Supp. 910, at page 912, which is Judge Babcock in 1994. Century 21 admits having some impeachment evidence already in its possession. Essentially Century 21 argues that the qualified reporter's privilege is overcome here because Rebchook's testimony that they sought is anticipated to provide stronger impeachment evidence. In other words, cumulative but even stronger in nature. Century 21 offers no legal authority to support this argument.

Furthermore, the *Silkwood* decision leads to an opposite conclusion. Under *Silkwood*, if Rebchook is not the only source for this evidence, meaning this type of evidence, the second

prong of the test is not met.

*United States versus Burke*, the Second Circuit Court of Appeals, 1983, 700 F.2d 70, at page 78. The District Court properly concluded that any information to be gleaned from the Sports Illustrated work papers would be merely cumulative, and thus would not defeat Looney's First Amendment privilege.

Lastly, from also the Southern District of New York in 1985, *United States ex rel. Vuitton Et Fils, SA* -- I can't speak French -- *versus Karen Bags, Inc.* This is 600 F. Supp. 667, holding that the reporter's privilege under the First Amendment was not overcome where, quote, any further facts that might possibly be gleaned from CBS's outtakes are likely to be merely cumulative.

In short, what DPS says in its reply brief on page eight, it points to the defendant -- that Mr. Dennis responded to the motion to dismiss, the District Court could assert -- I'm sorry -- Mr. Dennis acknowledged that the District could assert in a proper motion for summary judgment that FERPA and state law violations rendered his speech illegal, and therefore unprotected.

Well, that argument -- that statement is true, and the District -- DPS could now assert that in a proper motion if it's going to argue that the documents provided by Mr. Dennis constitute his speech on 9News. So, if their argument is that it doesn't matter what he said on the broadcast and what 9News

aired, what really matters is the documents he provided, that's the speech they're talking about, well, they now have that speech, those documents. Mr. Dennis has provided them with an exact replica of the documents that were -- he provided -- he has acknowledged he provided to 9News with the student's name unredacted and sloppily redacted in several instances such that the student's identity was divulged by Mr. Dennis to 9News.

That is an undisputed fact. And in light of that undisputed fact, there is no way, shape, or form that DPS can meet its burden to overcome 9News' constitutional privilege to not be compelled to produce unreported news information in its possession. And that includes obviously the outtakes of the interview that Mr. Fero I don't think even mentioned.

And certainly, they should not do so before alternative sources have been exhausted, including a deposition under oath by Mr. Dennis, but he has already through counsel here at this podium acknowledged that it is undisputed that he provided sloppily, and as the documents themselves show, completely unredacted copies of student education records to 9News. None of that information was broadcast by 9News. It's very clear Mr. Dennis didn't intend to have that be broadcast, and they honored his request.

So, in sum, we don't believe that any showing has been made nor can be made in light of the current state of the record that the information sought by 9News is necessary, central to

the dispute, or cannot be obtained from any other reasonable means, and the motion to compel should be denied.

THE COURT: Thank you, Mr. Zansberg. Mr. Lane?

MR. LANE: As much as I would like not to have to say this, I will say this, and that is we will -- we have no choice but to stipulate that Mr. Dennis inadvertently gave sloppily redacted and unredacted information to Chris Vanderveen at 9News, showing the name of the student, which is as good as it's going to get for the defendants here. I think this falls into the category of possibly after-acquired evidence, and they can do with it whatever they wish, but the facts is the facts, as someone once said. And them is the facts.

THE COURT: Thank you. Mr. Fero, anything else?

MR. FERO: Thank you. Thank you. So, I want to start with the point that was argued that for somehow, some way that the documents that were shown on the screen and the interview were not part of the reason for Mr. Dennis' termination. And this is -- this is conclusively established otherwise by documents in the record before you, Your Honor. It's document 38-1, and it's the July termination letter from DPS to Mr. Dennis, and it was submitted as an exhibit by, I believe the plaintiffs in their response.

And on the first page of that letter, it has -- it's a three-page letter. It has a number of reasons for Mr. Dennis' termination, but on the first page of that letter it reads, on

March 24th, 2023, you took part in an interview with a reporter with Channel 9News. The resulting 9News story highlights confidential documents to which you had access in your capacity as principal, including but not limited to a DPS administrative transfer form, a DPS threat assessment, and a juvenile justice charging document pertaining to the same young student of color.

Your public disclosure of confidential information allowed the reporter, the student's peers, and the larger McAuliffe International community to ascertain that the information you provided to Channel 9News was about him, causing the student to be singled out by faculty and staff, and ostracized by his peers. So, this is not after-acquired evidence. This cuts right to the reasons for termination. It also cuts right to the question of whether Mr. Dennis' speech was illegal, as we've argued and will continue to argue in this case.

Now, can we -- Mr. Zansberg said, we will just go ahead and file your motion for summary judgment. I mean, we're entitled to conduct full discovery on this, and that's all we're asking for. Okay? We've conducted partial discovery on this, but Mr. Dennis' provision and the admissions -- which we appreciate very much, but the admissions that have come forward today are not the end of the matter.

We still don't know for sure what Mr. Dennis provided to 9News or Mr. Vanderveen. There's three versions of documents

out there in the record right now, and no one on the other side has conclusively said otherwise. And by the way, Mr. Zansberg said -- suggested that you could see an example of the composite in Exhibit I, the composite that is -- that presumably 9News made. He must have misspoke. I think the Court can compare that for yourself, but if you look at page eight of Exhibit I, which was referenced, this is the page that's missing the top line redaction entirely, and you can see the student's name on it.

But the redactions that are on that page, the attempted redactions, or unless you use plaintiff's phrase, the sloppy redactions on that page, those are not -- those are not digital redactions. They appear to be different from what was shown on screen in the interview. These -- on Exhibit I, you can see wavy hand-drawn marker lines.

So, that's -- so, we've got Exhibit I, this latest one that Mr. Lane has produced for Mr. Dennis. We've got Exhibit H, which is what the plaintiff produced earlier in discovery. And then we've got the screenshot of what was actually shown in the interview. And so that's three different versions. Which -- which one? I mean, which -- what did Mr. Dennis actually provide? We're going to ask him that in a deposition, no doubt, but we need to know what 9News received from him on this issue.

Look, we're not looking for if Mr. Dennis -- I don't know what else he maybe sent them. The issue is what documents

did he give him related to what's shown on the screen? We tried in good faith to narrow the subpoena as much as we possibly can to exactly where our highest need in this case is, and that's what we've done.

Look, the First Amendment protection is serious, and we recognize that for reporters, but there's funny business here as to an essential element of this claim. We're just trying to get to the truth of what happened, what was provided. And if you think about how much time this has already gone on in this case and the resources that have gone into it on a motion to dismiss that was rejected because of an allegation that now appears to be completely withdrawn, well, that's just a problem the parties have to deal with, but it's going to be something the Court is going to have to deal with too.

And I'm sorry that we're here before you on a motion to compel, but we need 9News, not just their attorney, not just Mr. Dennis' attorney -- we need 9News to come forward and say, here, give us the documents that Mr. Dennis gave you so that we have what he says he gave and we have what they say they received. And is that just cumulative? Is it merely cumulative? No, it's not.

We still don't know whether he gave redacted documents -- I mean, excuse me -- unredacted documents. Why are there two versions of H and I, one with the line at the top and one without? When were these redactions made? 9News has

information that may help answer these questions, and we need to know them before the deposition. There's no other source other than 9News to tell us what they received. So, again, we thank you for your attention to this. We appreciate it, and we ask that you compel the subpoena so that we can finally get to the bottom of this. Thank you.

THE COURT: Thank you, Mr. Fero. Well, I intend to make a bench ruling, and I've spent quite a bit of time in advance of this hearing and have some notes, but I am going to declare about a 30-minute recess so that I can collect my thoughts and go over what has been said today with respect to the ruling in this case. So, we will be in recess for about 30 minutes. Yes, sir?

MR. ZANSBERG: If you would allow me?

THE COURT: Can you speak up, please?

MR. ZANSBERG: I'm sorry. If you would allow me about 30 seconds, and then I will allow Mr. Fero to respond. He just said something that is counterfactual.

THE COURT: All right.

MR. ZANSBERG: In arguing that the request is not cumulative, Mr. Fero said, we still don't know if Mr. Dennis gave 9News unredacted documents. And I would ask Mr. Fero if he maintains that position after he's received from Mr. Dennis Exhibit I in response to a request for production of all documents he provided to 9News that includes page eight, the

unredacted name of the student that Mr. Dennis has conceded he provided to 9News. Does Mr. Fero still contend, quote, we still don't know if he gave 9News unredacted documents? I will allow him to respond.

THE COURT: The arguments have been made. We will be in recess for approximately 30 minutes.

(Recess at 11:21 a.m., until 11:51 a.m.)

THE COURT: The pivotal question is whether DPS's need for the raw interview footage in documents sent to 9News outweighs the reporter's privilege under amendment one to the U.S. Constitution.

Under *Silkwood versus Kerr-McGee Corporation*, there are four factors to balance in determining whether to compel 9News to disclose the raw source material and documents at issue. And they are, one, whether the parties seeking information has independently attempted to obtain the information elsewhere and has been unsuccessful. Two, whether the information goes to the heart of the matter. Three, whether the information is of certain relevance. And four, the type of controversy.

In *Grandbouche versus Clancy*, at 825 Fed. 2d 1463, decided by the Tenth Circuit in 1987, the Court explains the fourth factor as, quote, the nature of the information. That is the type of controversy is the nature of the information. While *Silkwood* dealt with a reporter's confidential source, a nonconfidential source is similarly protected under the

standard, given the chilling effect of compelling disclosure of a reporter's sources or documents regardless of the confidentiality of those sources.

DPS asked me to apply the less onerous showing to compel disclosure because the source is not confidential. It fails, however, to cite Judge Babcock's opinion in *RE/MAX Intern Inc. versus Century 21 Real Estate Corporation*, in which Judge Babcock writes, and I quote, this distinction between confidential and nonconfidential sources is utterly irrelevant to the, quote, chilling effect, close quote, that the enforcement of these subpoenas would have on the flow of information to the press and to the public. The compelled production of a reporter's resource materials is equally as invidious as the compelled disclosure of his confidential informants, close quote.

The Tenth Circuit has not ruled on this issue, but I find Judge Babcock's reasoning persuasive, and therefore require the same showing for DPS to compel disclosure from a known source as would be required to compel from a confidential source.

The first subpoena request is for, quote, raw or source footage of the television story containing communications by Kurt Dennis, close quote. This likely includes both broadcast and nonbroadcast material. And I quote, under federal common law, journalists possess a qualified privilege not to disclose

information prepared or obtained in connection with a news story. And that's in numerous cases, but the cite for me is *Pugh*, P-U-G-H, *versus Avis Rent A Car Systems Inc.*, and that's at 1997 Westlaw 669876 from the Southern District of New York on October 28, 1997. It also cites one that's been mentioned here in argument, *United States versus Burke*, at 700 Fed. 2d 70, at pages 76 to 78, decided by the Second Circuit, and cert was denied by the U.S. Supreme Court.

In its reply, DPS cites to the transcript from a scheduling conference during which I stated to defense counsel, quote, you are entitled to discover the unedited filming as well as the edited filming, but the distinction has to be made during the trial, but you are entitled to do so, entitled to do that, close quote. It is correct that DPS could be entitled to the unedited raw footage if it proves its need through the balancing of the *Silkwood* factors. DPS has not shown that the four *Silkwood* factors weigh in favor of compelling 9News to provide the material source -- the raw source material, and as such, they are not entitled to it.

I am not persuaded that the unaired portions of Mr. Dennis' interview go to the heart of this matter, and I do not find that this material is particularly relevant. The termination letter indicates that Mr. Dennis was terminated due to, quote, the resulting 9News story, close quote, which included publicly disclosing confidential documents Mr. Dennis

had access to as principal.

9News argues in its response that DPS could not terminate Mr. Dennis based on statements included in the unaired portions of his interview, because those statements were never made public. In its reply, DPS states that, quote, all other footage 9News recorded are highly relevant. I think they meant "is," but nevertheless, that's the quote.

But beyond this conclusory statement, it fails to state with particularity why the unaired footage is relevant to determine whether Mr. Dennis properly redacted the documents provided. I do not see how the unaired footage bears any particular relevance to this case, let alone substantive relevance, especially because the crux of DPS argument hinges on the documents Mr. Dennis gave to 9News rather than any statements he made that were not aired.

Further, the nature of the information sought in the first subpoena request is nonpublic unedited footage of a news interview. As stated above, this category of information enjoys protection because the press' independence to select material for publication is paramount to a free press. DPS fails to persuade me that it is -- that its need for this unpublished material is central and relevant to defendants' case, and as *Silkwood* factors weigh against compelling disclosure. The two document requests in the subpoena seek documents Mr. Dennis provided to a third party, that is 9News, before he participated

in the interview that led to this lawsuit.

Mr. Dennis produced documents in response to defendants' discovery request, quote, seeking the documents Dennis provided 9News about, close quote. That is the DPS student. DPS identified an alternative source of these documents, the plaintiff in this case, and successfully acquired the documents from him through discovery. DPS fails to meet the first factor of the *Silkwood* test obtained -- it obtained the information from Mr. Dennis, and thus they do not need 9News to provide the materials.

Further, DPS has not yet deposed Mr. Dennis. This fact is crucial. DPS has not yet questioned Mr. Dennis under oath about the documents he provided 9News. Because he has produced potentially different versions of the documents in his initial and supplemental responses, a deposition is an alternative method to, quote, test the documents without requiring me to compel production and break the reporter's privilege afforded by our Constitution.

In its reply, DPS argues that, quote, defendants can question Dennis further at his deposition about the documents he has produced, but absent enforcement of the subpoena, there will be no external third-party check on his testimony. Accordingly, the subpoenaed records are needed before, not after, Dennis' deposition, and 9News is the only possible source of information to confirm or deny what Dennis says he supplied to the reporter,

close quote.

This argument does not go to the *Silkwood* factors. It might be nice or even ideal to have a third-party check on any witness' production or any litigant's production. However, in this case, the third party enjoys a First Amendment protection, and the four *Silkwood* factors must be balanced in favor of breaking that privilege.

While the fact that Mr. Dennis produced documents and has yet to be deposed weighs heavily against compelling disclosure, the remaining factors weigh in the same direction. Unlike the unaired footage, the documents Mr. Dennis provided to 9News are relevant and go to the heart of the matter. However, DPS has received these documents from Mr. Dennis, one of two parties in possession of the documents provided to 9News. DPS recognizes this, and notes that it wants these materials, quote, to test, close quote, whether the documents Mr. Dennis produced during this case discovery are what he actually provided to 9News.

This stated need for the documents does not get to the heart of the matter, nor does it particularly appear relevant given Mr. Dennis' production of the documents and the fact that DPS has not yet deposed Mr. Dennis. Thus, I am not persuaded that the second and third factors lean in favor of compelling production. DPS's reasoning for needing these documents from 9News suggests the subpoena is more of a fishing expedition,

which *Silkwood* explicitly disallows.

Overall, my analysis concludes that DPS has not made a clear and specific showing that the *Silkwood* factors weigh in favor of breaking the First Amendment protections enjoyed by journalists and compelling 9News to produce the materials sought. The unaired raw footage is in 9News' possession, but I fail to see how the unedited footage gets to the heart of the matter or is relevant, especially given that Mr. Dennis has not yet been deposed.

As to the documents, DPS is correct that the factual record is necessary, but DPS has not attempted to build the factual record with non-press sources. Mr. Dennis is one of the two parties in possession of the documents, the other being 9News, and he has produced them. I do not hold that overriding the reporter's privilege in this case is appropriate when he has not been deposed. In fact, the only effect of compelling 9News to provide its copies of those documents would be cumulative and fishing. Balancing the *Silkwood* factors, DPS's demonstrated need for these documents does not override the reporter's privilege. The motion to compel is denied. I want to thank counsel for their preparation and the work they put into this case. Thank you. We will be in recess.

(Proceedings concluded at 12:04 p.m.)

REPORTER'S CERTIFICATE

I, KEVIN P. CARLIN, Official Court Reporter for the United States District Court for the District of Colorado, a Registered Merit Reporter and Certified Realtime Reporter, do hereby certify that I reported by machine shorthand the proceedings contained herein at the time and place aforementioned and that the foregoing pages constitute a full, true, and correct transcript.

Dated this 5th day of January, 2026.



Kevin P. Carlin, RMR, CRR
Official Court Reporter